Receipt # 062954

ORIGINAL

FILED
MAY 27 2005
U.S. COURT OF FEDERAL CLAIMS

ECF

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CITY CRESCENT LIMITED PARTNERSHIP,
Plaintiff,
v.
THE UNITED STATES OF AMERICA,
Defendant.

Case No. 05-580C

## COMPLAINT

COMES NOW Plaintiff, City Crescent Limited Partnership, by counsel, and hereby alleges for its Complaint against Defendant, the United States of America, as follows:

### Jurisdiction

1. This Court has jurisdiction over this matter pursuant to the Contract Disputes Act of 1978, 41 U.S.C. §§ 601, *et seq.*, and the Tucker Act, 28 U.S.C. § 1491, *et seq.*

2. This action is timely brought within twelve months from the date of receipt of the Contracting Officer's Final Decision, as prescribed by 41 U.S.C. § 609(a)(1) and (3).

### Parties

3. Plaintiff, City Crescent Limited Partnership ("CCLP" or "the Partnership") is a limited partnership organized and existing under the laws of the State of Maryland, with its principal place of business located in Baltimore, Maryland.

4. The Defendant is the United States of America (the "Government").

## Factual Background

### A. The Lease Between CCLP and GSA.

5. In or about February 1992, the Government, acting through its agency, bureau, instrumentality and/or agent, the U.S. General Services Administration ("GSA") entered into GSA Lease No. GS-03B-09074 (the "Lease") with CCLP, the lessor, for the premises located at 10 South Howard Street, Baltimore, Maryland (the "Property").

6. The original term of the Lease was March 31, 1993 through March 30, 2003.

7. Among other provisions, the Lease contains GSAR 552.270-24, Tax Adjustment, which states, in pertinent part, that "[t]he Government shall pay additional rent for its share of increases in real estate taxes over taxes paid for the calendar year in which its lease commences (base year)." Lease, § 3.4, at 7. A true and correct copy of the Lease (including all Supplemental Lease Agreements ("SLA")) is attached hereto and incorporated herein as Exhibit 1.

### B. The Baltimore Ordinance Establishing The Supplemental Tax.

8. In June 1992, the City of Baltimore enacted Ordinance No. 57 (the "Ordinance") authorizing a Downtown Management District ("District") and Downtown Management District Authority ("DMA"). A true and correct copy of the Ordinance is attached hereto and incorporated herein as Exhibit 2.

9. The Ordinance states that funding for the DMA would be provided through a "supplemental annual property tax, levied on all properties subject to real property taxation." Baltimore, Md., Ord. No. 57, § 8(b) (June 29, 1992).

10. The Ordinance also clarified that the supplemental tax "shall be assessed and collected in conjunction with the property taxes assessed and collected by the City ('Regular Tax')" and "[e]nforcement of the Supplemental Tax shall be in accordance with the enforcement of the Regular Tax and all provisions applicable to the assessment, collection, enforcement and refunding of the Regular Tax shall apply to the Supplemental Tax..." Id.

11. The Ordinance further provides that "[t]he penalties and interest applicable to delinquent taxes shall be applied to delinquencies in payment of the Supplemental Tax." Id., § 8(g)(i).

12. With regard to liens for failing to pay the Supplemental Tax, the Ordinance states as follows:

> The amount of any outstanding assessment on any property, and accrued interest and other charges, shall constitute a lien on the property. The lien shall take precedence over all other liens, whether created prior to or subsequent to the assessment, commensurate with a lien for state and county taxes, general municipal taxes and prior improvement assessments...

Id., § 8(g)(ii).

13. The Property that is subject to the Lease is included within the District subject to the Supplemental Tax.

C. **The Parties Performance During The Lease Term.**

14. In or about July of every year during the Lease, CCLP received the real estate tax bill from the City of Baltimore for the Property. These annual tax bills for the Property included the State of Maryland tax ("State Tax"), the City of Baltimore tax ("City Tax") and the Supplemental Tax, the latter of which the City referred to as a Special Benefit District Surcharge on the real estate tax bill ("Supplemental Tax" or "District Surcharge"). The Supplemental Tax was first assessed against the Property in July 1995 for the tax year July 1, 1995 through July 30, 1996.

15. All three categories of real estate taxes – State Tax, City Tax and Supplemental Tax - were calculated based on the assessed value of the Property multiplied by the applicable tax rate for the tax year July 1 through June 30.

16. In or about August of every year during the Lease, CCLP provided GSA with copies of the real estate tax bills for the Property, which included the State Tax, the City Tax and the Supplemental Tax.

17. In addition, for each year, CCLP and GSA's Contracting Officer executed a Real Estate Tax Escalation Analysis ("Escalation Analysis"), which calculated the amount of real estate taxes due and payable by GSA to CCLP in accordance with GSAR 552.270-24 and the terms of the Lease. True and correct copies of CCLP's correspondence to the Contracting Officer regarding the real estate tax bills and the executed Escalation Analyses are attached hereto and incorporated herein as Exhibit 3.

18. The Escalation Analysis for each year included all three categories of real estate taxes – State, City and Supplemental Tax.

19. GSA paid the amount set forth in the executed Escalation Analysis every year during the Lease until 2002.

**D. Lease Renewal And Lease Status Report.**

20. In the meantime, in or about June 2001, CCLP and GSA renewed the Lease for a period of fifteen years from March 31, 2003 through March 30, 2018. See Exhibit 1, SLA #23.

21. By letter dated October 15, 2001, GSA's Contracting Officer provided a Lease Status Report to CCLP's lenders as a prerequisite to CCLP's ability to obtain long-term financing for the Property. A true and correct copy of the Lease Status Report is attached hereto and incorporated herein as Exhibit 4.

22. In the Lease Status Report, GSA stated as follows with respect to the Lease:

> The GSA Lease was entered into by the Government pursuant to authority conferred by the Federal Property Administrative Services Act of 1949, as amended by Public Law 85-886 and Public Law 86-249, as now codified at 40 U.S.C. 490(h). The GSA Lease was executed by a Contracting Officer of the United States of America pursuant to the authority of his Warrant and constitutes legal, valid, binding and enforceable obligations of the Government. A certified copy of the Contracting Officer's Warrant is attached hereto as Exhibit B. Any change in any provision contained in the GSA Lease from the form of provisions required under any statute or regulation has received all requisite authorizations and approvals necessary to cause the change or variation set forth therein to be legal, valid and binding on the United States. All Congressional approvals, if any, and other approvals for the execution, delivery and performance by the

> Government of its obligations under the GSA Lease have been obtained and are in full force and effect and are unmodified.

Id., at 2.

23. GSA further represented as follows:

> The GSA Lease is currently in full force and effect as against the Government. Neither the Government nor the Partnership are in default under the GSA lease, nor are there conditions that are existing or pending in and of themselves which may ripen into default under the GSA Lease. All duties and obligations of the Partnership with respect to the Project due through the date hereof have been satisfied or waived. There are no circumstances, events or conditions presently in existence that would confer upon the Government the right (i) to seek an offset against, take a deduction from or otherwise reduce any payment required to be made by it to the Partnership under the GSA Lease or (ii) to seek to terminate the GSA Lease. The Government is currently required to pay rent under the GSA Lease in the amount of $6,799,966.96 per year, of which $2,123,571.93 represents the Operating Costs portion of the rent, as provided pursuant to paragraph 3.5 of the Solicitation for Offers comprising part of the GSA Lease, as escalated in accordance therewith. The Government has not requested any changes to the Project which would cause a reduction in the non-maintenance portion of the rent.

Id., at 2-3 (emphasis added).

24. In reliance on the Lease Status Report, CCLP's lenders provided long-term financing to CCLP for the Property.

## E. The Dispute.

25. Contrary to GSA's representations set forth in the Lease renewal and GSA's Lease Status Report, by letter dated October 15, 2002, GSA contended that it had overpaid CCLP by $311,522.54 as a result of its improper

computation of the taxes due. The basis of GSA's contention was that the Supplemental Tax is not a real estate tax that GSA is required to pay pursuant to GSAR 552.270-24 and the Lease.

26. In addition, GSA demanded that CCLP refund the amounts representing the Supplemental Tax paid by GSA to CCLP.

27. Since 2002, GSA has failed and refused to pay any Supplemental Tax for the Property.

28. CCLP disputes GSA's claim regarding the Supplemental Tax on the grounds that GSA's demand is improper and is contrary to the terms of the Lease, GSAR 552.270-24, the Ordinance and applicable law.

29. On June 1, 2004, the Contracting Officer issued a Final Decision finding that the Supplemental Tax is not a real estate tax compensable pursuant to the terms of the Lease. As a result, the Contracting Officer concluded that "the Government has no obligation to reimburse the lessor for the Downtown Management District supplemental tax or any related increases." Moreover, the Contracting Officer concluded that "GSA may properly recover any overpayment made to the lessor in error related to the Downtown Management District supplemental tax." A true and correct copy of the Contracting Officer's June 1, 2004 Final Decision is attached hereto and incorporated herein as Exhibit 5.

30. CCLP received the Contracting Officer's Final Decision on June 4, 2004.

31. CCLP has satisfied all conditions precedent to bringing this action against the Government, and CCLP has completed and fulfilled any and all of its obligations and duties under the Lease not otherwise waived or excused.

**Count I**
**(Breach of Contract)**

32. CCLP incorporates by reference the allegations contained in Paragraphs 1 through 31 of this Complaint as if fully set forth herein.

33. Pursuant to the terms of the Lease and GSAR 552.270-24, the Government had a duty and obligation to pay to CCLP its share of increases for all real estate taxes associated with its Lease of the Property, including the State Tax, City Tax and Supplemental Tax.

34. Despite paying the Supplemental Tax until 2002, the Government has improperly demanded that CCLP refund the Government all of the amounts paid for the Supplemental Tax throughout the term of the Lease, plus interest.

35. Moreover, beginning with the payment of real estate taxes in 2002, the Government has improperly failed and refused to pay the applicable Supplemental Tax as required by the terms of the Lease and GSAR 552.270-24, which amount currently totals $132,755.93.

36. By improperly demanding a refund of the amounts paid for the Supplemental Tax (plus interest), and failing and refusing to pay the applicable Supplemental Tax since 2002, the Government has materially breached its obligations under the Lease.

37. The Government further waived its right and ability, and is otherwise estopped, (1) to demand a refund of the Supplemental Tax amounts

paid to CCLP and (2) to refuse to pay the Supplemental Tax since 2002, by and as a result of its actions and representations throughout the Lease term described herein.

38. As a direct and proximate result of the Government's material breaches of the Lease, CCLP is suffering, and will continue to suffer, substantial harm and damages.

WHEREFORE, CCLP respectfully requests that this Court:

(a) Enter judgment against the Government for breach of contract, and in favor of CCLP, with regard to the Government's improper demand for a refund of the Supplemental Tax amounts paid to CCLP to date;

(b) Enter judgment against the Government for breach of contract, and in favor of CCLP, as a result of the Government's improper failure to pay the applicable Supplemental Tax since 2002, and award CCLP damages in the amount of at least $132,755.93, together with the applicable statutory interest;

(c) Award CCLP its attorneys' fees and costs; and

(d) Grant any such other relief this Court finds just and proper.

**Count II**
**(Declaratory Judgment)**

39. CCLP incorporates by reference the allegations contained in Paragraphs 1 through 38 of this Complaint as if fully set forth herein.

40. As described in detail above, an actual controversy exists between the parties such that a declaratory judgment pursuant to 28 U.S.C. §§ 1491(a) and Rule 57 of the Rules of this Court is appropriate.

41. Pursuant to the Lease and GSAR 555.270-24, the Government was required to pay "its share of increases in real estate taxes over taxes paid for the calendar year in which its lease commences..." Exhibit 1, Lease, § 3.4, at 7.

42. Moreover, the Ordinance provided for the levy of the Supplemental Tax, which was assessed and collected in accordance with the provisions applicable to regular real estate taxes. Exhibit 2, Baltimore, Md., Ord. No. 57, § 8(b).

43. The Government paid the applicable real estate taxes, including the Supplemental Tax, for every year during the Lease until 2002, at which time it refused to pay the Supplemental Tax and demanded a refund of the Supplemental Tax amounts already paid under the Lease.

44. The terms of the Lease, GSAR 552.270-24 and applicable law require the Government to pay the applicable Supplemental Tax for the Property.

45. As a result, the Government's demand for a refund of the Supplemental Tax amounts paid under the Lease, as well as its refusal to pay the applicable Supplemental Tax since 2002, is without merit.

46. In addition, the Contracting Officer's June 1, 2004 Final Decision that the Government is entitled to recover the amounts paid to CCLP for the Supplemental Tax is unwarranted by the law and the facts.

47. Moreover, the Contracting Officer's June 1, 2004 Final Decision that the Government is not obligated to reimburse CCLP for the Supplemental Tax assessed against the Property is unwarranted by the law and the facts.

48. The Government further waived its right and ability, and is otherwise estopped, (1) to demand a refund of the Supplemental Tax amounts paid to CCLP and (2) to refuse to pay the Supplemental Tax since 2002, by and as a result of its actions and representations throughout the Lease term described herein.

49. As a direct and proximate result of the wrongful actions and/or inactions of the Government described above, CCLP is suffering, and will continue to suffer, substantial harm and damages.

WHEREFORE, CCLP respectfully requests this Court:

(a) Enter judgment declaring that CCLP has no contractual obligation under the Lease to refund the Government the monies paid to CCLP for the Supplemental Tax;

(b) Enter judgment declaring that the Government has a contractual and legal obligation to pay the applicable Supplemental Tax for the Property from 2002 through the end of the renewed Lease term;

(c) Enter judgment declaring that the Contracting Officer's Final Decision that the Government is entitled to recover the amounts paid to CCLP for the Supplemental Tax is void and of no effect;

(d) Enter judgment declaring that the Contracting Officer's Final Decision that the Government has no obligation to reimburse CCLP for the Supplemental Tax is void and of no effect;

(e) Award CCLP its attorneys' fees and costs; and

(f) Grant any such other relief this Court finds just and proper.

Dated: May 27, 2005.

Respectfully submitted,

City Crescent Limited Partnership

Robert G. Watt, Esquire
Watt, Tieder, Hoffar & Fitzgerald, LLP
8405 Greensboro Drive, Suite 100
McLean, Virginia 22102
(703) 749-1000 (phone)
(703) 893-8029 (fax)

Counsel for Plaintiff, City Crescent Limited Partnership

Of Counsel:

C. Kelly Skrabak, Esquire
Watt, Tieder, Hoffar & Fitzgerald, LLP
8405 Greensboro Drive, Suite 100
McLean, Virginia 22102
(703) 749-1000 (phone)
(703) 893-8029 (fax)