IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| CITY CRESCENT LIMITED PARTNERSHIP,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 05-580<br>(Judge Wheeler) |

# DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

DEBORAH A. BYNUM
Assistant Director

MICHAEL J. DIERBERG
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Fl.
1100 L. St. NW
Washington, DC 20530

February 15, 2006

Attorneys for Defendant

# TABLE OF CONTENTS

PAGE(S)

DEFENDANT'S BRIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. Nature of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I. Standard Of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II. Contracts Must Be Enforced According To Their Unambiguous Terms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III. The Unambiguous Language Of The Lease Does Not Require The Government To Pay For Special Assessments . . . . . . . . . . . . . . 6

IV. The Surcharge For The Special Benefit District Is A Special Assessment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

V. There Is No Exception Which Would Require the Government To Pay For The Special Assessment . . . . . . . . . . . . . . . . . . . . . . . . . . 15

VI. The Government Has The Right To Recoup Erroneous Payments . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# TABLE OF AUTHORITIES

CASES PAGE(S)

2nd Roc-Jersey Assoc. v. Town of Morristown,
731 A.2d 1 (N.J. 1999) . . . . . . . . . . 14

Aetna Casualty & Surety Co. v. United States,
526 F.2d 1127 (Fed. Cir. 1975) . . . . . . . . . . 21

Allstate Mgmt. Corp. v. Grand Union Co.,
142 A.D.2d 344 (N.Y. App. Div. 1988) . . . . . . . . . . 9

Alvin. Ltd., PSBCA 1155,
1985 WL 16711 (1985), rev'd on other grounds Alvin, Ltd. v. United States Postal Serv., 816 F.2d 1562 . . . . . . . . . . 20

Alvin, Ltd. v. United States Postal Serv.,
816 F.2d 1562 (Fed. Cir. 1987) . . . . . . . . . . 15, 16, 18

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . 5

Carstens v. McLean,
7 F.2d 322 (9th Cir. 1925) . . . . . . . . . . 8

BGK Main St. Operating Assoc., Ltd. P'ship, Inc. v. Gen. Serv. Admin.,
GSBCA 16238, 2004 WL 1352894 (2004) . . . . . . . . . . 9

Cubic Def. Sys., Inc. v. United States,
45 Fed. Cl. 450 (1999) . . . . . . . . . . 5

Efros v. Russo,
177 A.2d 565 (N.J. Super. Ct. App. Div. 1962) . . . . . . . . . . 18-21

Fed. Reserve Bank of St. Louis v. Metrocentre Improvement Dist. #1,
657 F.2d 183 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14

G & A Inc. v. Nahra,
514 N.W.2d 255 (Mich. Ct. App. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Gould, Inc. v. United States,
935 F.2d 1271 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Gould v. Mayor & City Council of Baltimore,
59 Md. 378 (1883) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Illinois Cent. R. Co. v. City of Decatur,
147 U.S. 190 (1893) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

Ittner v. Robinson,
52 N.W. 846 (Neb. 1892) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Johnson v. Dalrymple,
123 S.W. 1020 (Mo. Ct. App. 1910) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Kimco Realty v. United States,
51 Fed. Cl. 257 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Lockheed Martin IR Imaging Systems, Inc. v. West,
108 F.3d 319 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

McDaniel Bros. Contr. Co., GSBCA 6973,
1984 WL 13462 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 20

S.S. Silberblatt Inc. v. United States,
888 F.2d 829 (Fed. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Stewart v. Fleming,
131 S.W. 955 (Ark. 1910) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Sulzer v. Montgomery County,
484 A.2d at 291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Summerfield Housing Ltd. P'ship v. United States,
42 Fed. Cl. 160 (1998), aff'd 217 F.3d 860 . . . . . . . . . . . . . . . . . . 11, 12, 19

Thompson v. First National Bank of Hollywood,
321 So.2d 466 (Fla. Dist. Ct. App. 1975) . . . . . . . . . . . . . . . . . 9, 18, 19, 20

United States v. Wurts,
303 U.S. 414 (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

V.F.W. v. Montgomery County,
115 A.2d 249 (Md. 1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Walling Warehouse Co. v. Springhill Fuel Co.,
562 P.2d 1221 (Or. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Williams v. Anne Arundel County,
638 A.2d 74 (Md. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 14

Wright Runstad Prop. Ltd. P'ship v. United States,
40 Fed. Cl. 820 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Zimmerman v. City of Memphis,
67 S.W.3d 798 (Tenn. App. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

REGULATIONS

48 C.F.R. § 552.270-24 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8

MISCELLANEOUS

Blacks Law Dictionary, 112 (7th Ed. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| CITY CRESCENT LIMITED PARTNERSHIP,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 05-580<br>(Judge Wheeler) |

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant respectfully requests that the Court grant summary judgment in favor of the Government pursuant to Rule 56 of the Rules of this Court upon the grounds that there are no genuine issues of material fact and defendant is entitled to judgment as a matter of law. In support of this motion, we rely upon the allegations set forth in the complaint, the following brief, and our proposed findings of uncontroverted fact, filed under separate cover.

DEFENDANT'S BRIEF

STATEMENT OF THE ISSUES

1. Whether the unambiguous language of the lease requires the Government to pay for special assessments.

2. Whether the surcharge for the special benefit district for the central business district of downtown Baltimore is a special assessment.

3. Assuming that the unambiguous language of the lease does not require the Government to pay for special assessments and that the surcharge for the special benefit district is a special assessment, whether an exception applies that would nevertheless require the Government to pay for the special assessment.

4. Whether the Government is barred by waiver or estoppel from recouping monies it has erroneously paid.

## STATEMENT OF THE CASE

### I. Nature of the Case

In August, 1990, plaintiff, City Crescent Limited Partnership ("City Crescent"), and the General Services Administration ("GSA") entered into a lease agreement for an office building in Baltimore, Maryland. The lease contains a tax escalation clause, which provides in pertinent part, "The Government shall pay additional rent for its share of increases in real estate taxes over taxes paid for the calendar year in which its lease commences (base year)."

In 1992, the city of Baltimore passed an ordinance establishing a special benefit district for the central business district of downtown Baltimore, and authorized a surcharge to fund additional improvements and services for this

special benefit district. The surcharge, alternatively referred to by the city as a "special benefit district surcharge" or a "supplemental tax," is imposed solely upon property owners within the special benefit district.

Starting in 1995, the parties included the surcharge in the calculation of rental adjustments pursuant to the tax adjustment clause. However, in October, 2002, the GSA determined that the inclusion of the surcharge in the calculation of real estate tax adjustments was in error. By letter dated October 15, 2002, the GSA informed City Crescent:

> When calculating the current tax reimbursement, it was discovered that the prior years' tax analyses were computed incorrectly. The District Surcharge . . . is not a general real estate tax subject to escalation under the lease. . . . These calculations have resulted in an overpayment to the lessor in the amount of $311,522.

Following a challenge by City Crescent, on June 1, 2004, the contracting officer issued the GSA's final decision, concluding that the GSA is entitled to recoup monies paid by the GSA as a result of the surcharge for the special benefit district.

II. <u>Statement of Facts</u>

The relevant, uncontroverted facts are set forth in defendant's proposed findings of uncontroverted fact, which accompany this motion.

SUMMARY OF THE ARGUMENT

Summary judgment should be granted in favor of the Government because: (1) the unambiguous language of the lease does not require the Government to pay for special assessments; (2) there is no genuine issue of material fact that the surcharge for the special benefit district is a special assessment; (3) no exception applies which would require the GSA to pay the special assessment; and (4) it is well established that the Government may recoup monies erroneously paid.

The tax adjustment clause provides that the Government shall pay additional rent for increases in "real estate taxes" relative to the base year of the lease. The term "real estate taxes" and similar terms have been interpreted for more than one hundred years as not including special assessments. Therefore, the lease provision requiring the Government to pay additional rent for increases in the lessor's "real estate taxes" does not require the Government to pay additional rent for special assessments.

There is no genuine issue of material fact in this case that the surcharge for the special benefit district is a special assessment. The surcharge is unmistakably a special assessment because the surcharge is imposed upon a limited group of property owners for improvements and services benefitting the property owners within the special benefit district. Furthermore, other courts have examined

similar surcharges for special benefit districts and concluded that the surcharges are special assessments.

Lastly, although the Government has erroneously paid increased rent based upon the special assessment, the Government is entitled to recover these erroneous payments. For these reasons, there are no genuine issues of material fact and defendant is entitled to judgment as a matter of law.

## ARGUMENT

### I. Standard Of Review

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. RCFC 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). A genuine issue is one that "may reasonably be resolved in favor of either party." Id. at 250. When considering cross-motions for summary judgment, the court evaluates each motion under the same standard. Cubic Def. Sys., Inc. v. United States, 45 Fed. Cl. 450, 457 (1999).

## II. Contracts Must Be Enforced According To Their Unambiguous Terms

Contract interpretation begins with the contract's plain language. Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991). The words of a contract are generally deemed to have their ordinary meaning appropriate to the subject matter. Lockheed Martin IR Imaging Systems, Inc. v. West, 108 F.3d 319 (Fed. Cir. 1997). "The disputed terms must be read such that they are given their ordinary meaning within the context of a lease." Kimco Realty v. United States, 51 Fed. Cl. 257, 261 (2001).

## III. The Unambiguous Language Of The Lease Does Not Require The Government To Pay For Special Assessments

The lease in this case incorporates standard lease language from the Federal Acquisitions Regulation requiring the Government to pay "additional rent for its share of increases in real estate taxes over taxes paid for the calendar year in which its lease commences (base year)." A11,[1] § 3.4; 48 C.F.R. § 552.270-24 (1989). This Court and numerous other courts have held that the term "real estate taxes" and similar terms do not include special assessments.

---

[1] Unless otherwise noted, A__ refers to the appendix attached to defendant's proposed findings of uncontroverted fact, filed contemporaneously with this motion for summary judgment.

For example, this Court previously addressed the exact same lease provision at issue in this case, and concluded that special assessments should not be included in the calculation of rental increases under the tax adjustment clause. Wright Runstad Prop. Ltd. P'ship v. United States, 40 Fed. Cl. 820 (1998). In Wright Runstad, the GSA leased a portion of an office building in Seattle, Washington. The GSA's lease incorporated the same clause at issue in this case: "[t]he government shall pay additional rent for its share of increases in real estate taxes over taxes paid for the calendar year in which its lease commences (base year)." Id. at 821; 48 C.F.R. § 552.270-24 (1989). After the parties entered into the lease, the city of Seattle levied an assessment against property owners within a "Local Improvement District" to defray the cost of a tunnel built to alleviate traffic congestion in downtown Seattle. Id. at 822.

Although the GSA initially included this assessment in calculating rental adjustments pursuant to the tax adjustment clause, the GSA later recognized that the inclusion of the special assessment was in error. Id. Therefore, the GSA indicated that it would deduct the overpayment from future rental payments. Id. The lessor filed suit challenging the GSA's interpretation of the lease. Id.

This Court concluded that the plain meaning of the phrase "real estate taxes" does not include special assessments, and therefore the Government was entitled to recoup erroneous payments for the assessment:

> Accordingly, the plain meaning of the Tax Adjustment clause is dispositive. The clause unambiguously requires GSA to pay its share of increases in 'real estate taxes.' Since it is well established that special assessments are distinct from real estate taxes, and since the Metro Tunnel assessment is a special assessment, GSA is not obligated to pay the assessment.

Id. at 826.

The Court of Federal Claims' decision in Wright Runstad is consistent with decisions of numerous other courts going back more than one hundred years holding that a lease obligating the lessee to pay a portion of "real estate taxes" or similar language does not obligate the lessee to pay for special assessments. See e.g. Ittner v. Robinson, 52 N.W. 846 (Neb. 1892) (holding that lease obligating lessee to pay "all taxes that may be assessed" against the property did not obligate the lessee to pay a special assessment); Carstens v. McLean, 7 F.2d 322, 323 (9th Cir. 1925) ("We think the term 'annual taxes' as used in the lease had reference to taxes for general revenues for the purpose of maintaining and carrying on government, and in which all property is assessed alike and no special benefits enure to any taxpayer."); Stewart v. Fleming, 131 S.W. 955, 957 (Ark. 1910)

(lease requiring lessee to pay taxes assessed against the land does not obligate lessee to pay special assessments); Johnson v. Dalrymple, 123 S.W. 1020, 1023 (Mo. Ct. App. 1910) (concluding that phrase "all taxes" in lease does not include special assessments); G & A Inc. v. Nahra, 514 N.W.2d 255, 256-57 (Mich. Ct. App. 1994) (lease requiring lessee to pay "all of the real property taxes" does not obligate lessee to pay special assessments); Allstate Mgmt. Corp. v. Grand Union Co., 142 A.D.2d 344, 346 (N.Y. App. Div. 1988) (lease requiring lessee to pay pro rata share of increase in "real estate tax assessment" does not obligate lessee to pay special assessments); Walling Warehouse Co. v. Springhill Fuel Co., 562 P.2d 1221, 1222 (Or. 1977) (obligation to pay any "increase in real estate taxes" does not include special assessments); Thompson v. First National Bank of Hollywood, 321 So.2d 466, 467 (Fla. Dist. Ct. App. 1975) ("[T]he word 'taxes' and the term 'special assessments' are not synonymous and an agreement by the tenant to pay taxes is not an agreement to pay special assessments."); S.S. Silberblatt Inc. v. United States, 888 F.2d 829 (Fed. Cir. 1989) (affirming BCA's decision that the Postal Service was not responsible for payment of special assessments as a result of lease provision providing rental adjustments based upon changes in "general real estate taxes"); Contra BGK Main St. Operating Assoc., Ltd. P'ship, Inc. v. Gen. Serv. Admin., GSBCA 16238, 2004 WL 1352894 (2004) (concluding,

without reference to the long line of cases cited above, that a lease obligating the lessee to pay increases in real estate taxes includes an obligation to pay for special assessments).

The Court of Federal Claims' decision in Wright Runstad is also consistent with a 1984 memo issued to all leasing activities within the GSA:

> [T]he Government will pay only those real estate taxes that are for the purpose of funding general services of the taxing jurisdictions. Such taxes are defined as taxes which are assessed on an ad valorem basis against all taxable property in the taxing jurisdiction without regard to benefit to the property.

A71-72.

Furthermore, the distinction between real estate taxes and special assessments has been recognized in contexts outside of leases. For example, in Illinois Cent. R. Co. v. City of Decatur, 147 U.S. 190 (1893), the Supreme Court held that a statutory exemption from "all taxation of every kind" did not include an exemption from special assessments. Id. at 197-209. Likewise, the United States Court of Appeals for the Eighth Circuit found, "where a statute waives the exemption for 'real estate taxes,' that waiver alone will not extend to special assessments." Fed. Reserve Bank of St. Louis v. Metrocentre Improvement Dist. #1, 657 F.2d 183, 186.

In light of the clear distinction between "real estate taxes" and similar language, on the one hand, and special assessments, on the other hand, the unambiguous language of the lease does not obligate the Government to pay for increases arising from special assessments.

IV. The Surcharge For The Special Benefit District Is A Special Assessment

There is no genuine issue of material fact that Baltimore's surcharge for the special benefit district is a special assessment. In determining whether a particular surcharge is a special assessment, the Court of Federal Claims has looked to the law of the state creating the surcharge. Summerfield Housing Ltd. P'ship v. United States, 42 Fed. Cl. 160 (1998) (applying Maryland law in determining whether a Maryland surcharge is a special assessment), aff'd 217 F.3d 860.

Under Maryland law, a special assessment tax is a "tax levied occasionally as may be required upon a limited class of persons interested in local improvement, and who are presumed to be benefitted by the improvement over and above the ordinary benefit which the community in general derive from the expenditure of money." Williams v. Anne Arundel County, 638 A.2d 74, 78 (Md. 1994) (quoting Gould v. Mayor & City Council of Baltimore, 59 Md. 378, 380 (1883)). Maryland law presumes that the property owners paying the special assessment receive a special benefit. V.F.W. v. Montgomery County, 115 A.2d

249, 254 (Md. 1955); Sulzer v. Montgomery County, 484 A.2d at 291; Summerfield Housing Ltd. P'ship v. United States, 42 Fed. Cl. 160, 170 n. 26 (examining Maryland law; "Whenever a legislature passes a special assessment, by definition that special assessment must confer a special benefit upon the property assessed.). Special assessments "may be, but are not required to be, based upon ad valorem assessments." Williams v. Anne Arundel County, 638 A.2d at 77, n. 4.

Maryland law is consistent with the distinction drawn by other jurisdictions. For example, the Supreme Court has distinguished between taxes and special assessments as follows:

> Between taxes-or 'general taxes,' as they are sometimes called . . . and special taxes or special assessments, which are imposed upon property within a limited area for the payment for a local improvement, supposed to enhance the value of all property within that area, there is a broad and clear line of distinction, although both of them are properly called taxes, and the proceedings for their collection are by the same officers, and by substantially similar methods. Taxes proper, or general taxes, proceed upon the theory that the existence of government is a necessity; that it cannot continue without means to pay its expenses; that for those means it has the right to compel all citizens and property within its limits to contribute; and that for such contribution it renders no return of special benefit to any property, but only secures to the citizen that general benefit which results from protection to his person and property, and

> the promotion of those various schemes which have for their object the welfare of all.

Illinois Cent. R. Co. v. City of Decatur, 147 U.S. at 197-98; See also Blacks Law Dictionary, 112 (7th Ed. 1999) ("[A]n assessment differs from a general tax in that an assessment is levied only on property in the immediate vicinity of some local municipal improvement and is valid only where the property assessed receives some special benefit differing from the benefit that the general public enjoys.").

It is clear that the surcharge in this case is a special assessment because it is imposed upon a limited group of property owners who receive a benefit beyond that which is enjoyed by other individuals and entities outside of the special benefit district. In this case, the business improvement district surcharge is imposed solely upon property owners within a defined subregion of the taxing authority. A19, § 1-2(d)(1). Furthermore, because the improvements and services funded by the surcharge are directed toward the special benefit district, the property owners within the special benefit district receive a greater a benefit from the improvements and services than those outside the special benefit district or the general public of the entire city. Moreover, City Crescent lacks any evidence that would overcome the presumption that the surcharge provides a special benefit to the property owners within the special benefit district.

Maryland's highest court considered a surcharge for funding improvements and services for a special benefit district and concluded that the surcharge was a special assessment. Williams v. Anne Arundel County, 638 A.2d 74, 77 (Md. 1994). As in this case, in Williams v. Anne Arundel County, the surcharge funded a variety of services and improvements for the special benefit district, such as lawn care, trash removal, repair, security, and acquisition of community property. Id. In reaching its conclusion that the surcharge was a special assessment, the court noted that although special assessments have been used in the past to fund capital improvements, "special benefit assessments may also be used to finance the operating expenses of local government for services beneficial to property in an area." Id.

Courts in other jurisdictions have likewise found that surcharges for services and improvements in special benefit districts are special assessments. E.g. 2nd Roc-Jersey Assoc. v. Town of Morristown, 731 A.2d 1, 7-9 (N.J. 1999); Zimmerman v. City of Memphis, 67 S.W.3d 798, 799-804 (Tenn. App. 2001); Federal Reserve Bank of St. Louis v. Metrocentre Improvement District #1, 657 F.2d at 185-86; McDaniel Bros. Contr. Co., GSBCA 6973, 1984 WL 13462. For the foregoing reasons, there is no genuine issue of material fact that the surcharge for the special benefit district is a special assessment.

## V. There Is No Exception Which Would Require the Government To Pay For The Special Assessment

Some courts have found exceptions to the rule that leases requiring the lessee to pay a portion of the lessor's "real estate taxes" or similar language does not obligate the lessee to pay for special assessments. The United States Court of Appeals for the Federal Circuit has recognized an exception when the assessment is imposed in lieu of taxes for services previously funded by the taxes. Other courts have recognized an exception when the lease is perpetual. Lastly, one court found an exception when the lessee, rather than the property owner, receives the entire benefit of improvements or services provided by the assessment. None of these exceptions apply in this case.

The exception recognized by the Federal Circuit is that a special assessment will be payable by the lessee pursuant to a lease requiring the lessee to pay for increases in real estate taxes when the special assessment is used in lieu of real estate taxes to fund preexisting governmental services. Alvin, Ltd. v. United States Postal Serv., 816 F.2d 1562, 1566-57 (Fed. Cir. 1987). In Alvin, the parties entered into a lease providing that the Postal Service would be responsible for the "general real estate taxes due and payable" on the property. Id. at 1562. After the parties entered into the lease, California's constitution was amended to provide

that ad valorem taxes on real property shall not exceed 1% of the assessed value of the property. Id. at 1563. As a result, communities in California found alternative methods for funding the general services previously funded by the real estate taxes. Id. The property in question was located in a community which passed a new assessment to fund the same services which had been previously funded by the real estate taxes. Id. at 1565.

The Court found that the Postal Service would be obligated to pay for the assessment:

> Such payment reinstates the original bargain, as it was understood by both the Postal Service and the lessors. . . . A basic predicate to the agreement between the parties was the expected continuation of the general system of taxation on real property. [The constitutional amendment] made illegal a significant portion of that preexisting system and thereby vitiated a significant basis for the real estate tax clause as comprehended by the parties before the constitutional amendment.

Id. at 1566-67.

In S.S. Silberblatt Inc. v. United States, 888 F.2d 829 (Fed. Cir. 1989), the Federal Circuit explained that Alvin stands for the proposition that the Postal Service would be liable for special assessments under the lease only if the assessment is "levied *in lieu of* general real estate taxes." Id. at 832 (concluding

that the special assessment was not in lieu of general real estate taxes and that the Postal Service was not liable for the special assessment).

City Crescent cannot demonstrate that its special assessment was levied in lieu of real estate taxes. Moreover, the evidence indicates just the opposite – the city created the surcharge and the special benefit district so as to ensure that they are in addition to, not in lieu of, city tax revenue and services. For example, pursuant to article 14, section 1-12 of the Baltimore City Code,

> Prior to imposing and collecting the Supplemental Tax authorized by this subtitle, the Authority shall enter into a memorandum of understanding with the Mayor of the City regarding the level of services to be maintained by the City as the City's partnership obligation to the Authority and the District's taxpayers. . . . Such a memorandum shall . . . commit the City to the maintenance of such levels of service.

A29, Balt. City Code Art. 14, § 1-12(a)-(b). Furthermore, section 1-12 provides that there shall be no decreases in city services within the downtown management district "except as part of an overall decrease in services necessitated by changes in funding, policy, or resources, and then only in proportion to the decreases implemented elsewhere in the City." A29, Balt. City Code Art. 14, § 1-12(c). In other words, provisions of the Baltimore city code ensure that the services funded

by the special assessment will not replace or reduce services previously funded by the city. Therefore, the exception from Alvin and S.S. Silberblatt does not apply.

A second exception to the rule has been found when the lease is perpetual. Thompson v. First National Bank of Hollywood, 321 So.2d at 468. The rationale for this exception is that a perpetual lease is the equivalent of a fee simple interest. Id. This exception does not apply because the lease is not perpetual. A5, 7.

One court has also found an exception when the lessee will receive the entire benefit of the improvements or services provided by the special assessment. Efros v. Russo, 177 A.2d 565, 568 (N.J. Super. Ct. App. Div. 1962). The New Jersey appellate court began its analysis by stating,

> There is no doubt that it has generally been recognized . . . that 'a clear and manifest distinction' exists between the terms 'taxes' and 'assessments.' It is equally clear that, absent special circumstances, the word 'taxes' or the words 'all taxes' would not include 'special assessments.'

Id. at 567. However, the court found that "special circumstances" were present because the expected life of the improvement funded by the special assessment would expire ten years before the initial term of a 52-year lease with a 23 year renewal option. Id. at 568. Hence, the lessee received all of the benefit of the improvement and the lessee was responsible for paying the special assessment. Id.

The Court of Federal Claims has implicitly rejected the exception described in Efros. In Summerfield Housing Ltd. P'ship v. United States, 42 Fed. Cl. 160 (1998), aff'd 217 F.3d 860, this Court concluded that the lessor must pay a special assessment for an annual solid waste service charge, used to supplement other city revenue for the collection of solid waste. Id. at 171. In reaching this conclusion, the only possible exception that the Court recognized is the exception stated in Alvin and S.S. Silberblatt regarding surcharges used in lieu of real estate taxes. Id. at 170-71. Furthermore, the Court implicitly rejected the exception provided by Efros. The lessor contended that the lessee should pay the special assessment because, while the surcharge was imposed annually for solid waste collection, all of the units in the building were leased for twenty years, "and thus no benefit inures to" the lessor. Id. at 170 n. 26. The Court, citing Maryland law, found this contention irrelevant. Id.

The analysis in Efros was also rejected by the court in Thompson v. First National Bank of Hollywood, 321 So.2d at 469. In Thompson, a special assessment was assessed against the property owner for sewer improvements. Id. at 467. At the time of the special assessment, there were approximately 50 years remaining on the lease. Id. at 466-67. The court found that the lessor, rather than the lessee, was obligated to pay for the special assessment. Id. at 469. In reaching

this conclusion, the court explicitly declined to compare the duration of the benefits of the sewer improvements against the remaining term of the lease. Id. In doing so, the court dismissed the decision in Efros as "a minority of one" based upon "hard facts." Id.; see also Alvin. Ltd., PSBCA 1155, 1985 WL 16711 (1985) (distinguishing the "extreme" facts of Efros), rev'd on other grounds Alvin, Ltd. v. United States Postal Serv., 816 F.2d 1562.

Moreover, none of the other cases to have cited Efros have actually found an exception based upon Efros's rule. See e.g. Wright Runstad Prop. Ltd. P'ship v. United States, 40 Fed. Cl. 820 (1998) (discussing Efros in dicta, noting that the exception wouldn't apply because there was no evidence that the useful life of the improvement would expire before the end of the lease's term); McDaniel Bros. Contr. Co., GSBCA 6973 (same).

Even assuming this Court were to recognize the exception as described by the court in Efros, the exception would not apply because the GSA will not receive all of the benefits from the improvements and services funded by the special assessment. See McDaniel Bros. Contr. Co., GSBA 6973, 1984 WL 13462 (interpreting the exception in Efros as applying only when the lessee will receive all of the benefits of those improvements). Although the improvements and services funded by the special assessment may vary from year to year, some of the

improvements and services funded in the past include streetscape improvements, aiding in downtown residential development, removal of graffiti, creating signage and kiosks to guide pedestrians to cultural landmarks, increased parking, and improvements to storefront facades. Ex. 44-47, 49-57. There can be no material factual dispute that these improvements, and the benefits received by the improvements, should be expected to outlast the original term of the lease of ten years, and even the 15 year renewal option exercised in 2001. Consequently, even if this Court were to recognize the exception as stated in Efros, the exception does not apply.

VI. The Government Has The Right To Recoup Erroneous Payments

City Crescent claims that the Government is estopped from recovering funds erroneously paid by the Government for the special assessment. This contention is contrary to well-established law:

> It is a well-settled principle that the Government has inherent authority to recover sums illegally or erroneously paid, and that it cannot be estopped from doing so by the mistakes of its officers or agents.

Aetna Casualty & Surety Co. v. United States, 526 F.2d 1127, 1130 (Fed. Cir. 1975) (citing United States v. Wurts, 303 U.S. 414, 415 (1938). As this Court stated in Wright Runstad,

> Because the Tax Adjustment clause obligated the GSA only to pay increases in real estate taxes, the payment of the [special assessment] was erroneous. Consequently, the government has not only the right but the duty to recover the payment and it cannot be estopped from doing so."

40 Fed. Cl. at 827.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court grant summary judgment in favor of the Government because there are no genuine issues of material fact and defendant is entitled to judgment as a matter of law.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

/s/ Michael J. Dierberg
MICHAEL J. DIERBERG
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Fl.
1100 L. St. NW
Washington, DC 20530
Telephone: (202) 353-0536
Facsimile: (202) 307-0972

Attorneys for Defendant

February 15, 2006