IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CITY CRESCENT LIMITED PARTNERSHIP, Plaintiff, | ) | No. 05-580 (Judge Wheeler) |
| v. | ) | |
| THE UNITED STATES, Defendant. | ) | |

DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT

Pursuant to Rule 56 of the Rules of this Court, defendant respectfully submits the following proposed findings of uncontroverted fact:

1. City Crescent Limited Partnership ("City Crescent") and the United States ("Government") entered into lease number GS-03B-09074, dated August 31, 1990, for office space in the city of Baltimore, Maryland. A2.[1] The original term of the lease was ten years following completion of alterations and improvements to the property. A5.

2. The parties agreed to amend the lease, pursuant to Supplemental Lease Agreement No. 9, to provide that the term of the lease commences on March 31,

[1] Although the entire lease is reproduced as exhibit 1 to plaintiff's complaint, we have reproduced portions of the lease in the appendix to the proposed findings of uncontroverted fact for ease of reference.

1993 and terminates on March 30, 2003. A7. Through the issuance of SLA No. 23, in June, 2001, the Government exercised a 15 year option on the lease. Ex. D. The option extended the lease to March 30, 2018. A9.

3. The lease contains a tax adjustment clause providing for adjustments to rent based upon changes in City Crescent's real estate taxes from the base year. A11, § 3.4. This clause states, in relevant part, "The Government shall pay additional rent for its share of increases in real estate taxes over taxes paid for the calendar year in which its lease commences (base year)." Id.

4. The 1992 Maryland General Assembly enacted House Bill No. 1252, which amends the charter of Baltimore to authorize the creation of a downtown management authority ("DMA"). Compl., Ex. 2, at 1. The DMA is authorized by the charter to create a special benefit district for the central business district of Baltimore. Id. at 2. The programs and activities of the DMA are administered and overseen by the Downtown Partnership of Baltimore, Inc. A18, 33, 41, 42.

5. In June 1992, the Mayor approved Ordinance No. 57, which established the DMA and the central business district. Compl., Ex. 2, at 1. This Ordinance is codified as Article 14 of the Baltimore City Code. A18-39.

6. The Baltimore City Code authorizes the DMA to impose a surcharge upon property owners within the special benefit district. A27-28. The surcharge is assessed and collected in conjunction with property taxes assessed by the city.

Id. The surcharge is referred to alternatively by the city as a “special benefit district surcharge” or as a “supplemental tax.” Id., Compl. Ex. 3 (bill from city for the surcharge).

7. Improvements and services within the special benefit district which have been supported in the past through the surcharge include the removal of trash, debris, graffiti, and posters; the installation of video surveillance cameras; streetscape improvements; improvements to building facades; and the creation of signage for pedestrians. A47, 49-58.

8. Starting in October, 1994, City Crescent each year submitted a real estate tax bill for purposes of calculating the rental adjustment pursuant to the tax escalation clause. Compl. Ex. 3. The information provided in 1994 did not contain any bill for a surcharge. Id.

9. Starting in August 11, 1995, City Crescent each year submitted, along with the real estate tax bill, a bill for the special benefit district surcharge. Id. The heading for the bill for the real estate taxes is marked, “DEAR PROPERTY OWNER: THIS IS YOUR REAL PROPERTY TAX BILL." Id. The heading for the bill for the surcharge is marked, "DEAR PROPERTY OWNER: THIS IS YOUR SPECIAL BENEFIT DISTRICT SURCHARGE.” Id. City Crescent combined the amounts billed on these statements, and forwarded them to the GSA with a cover letter which indicated City Crescent’s calculation of the rental

increase pursuant to the tax escalation clause stating, "Please find enclosed copies of the real estate taxes paid for the City Crescent building." Id.

10. Based upon the information provided by City Crescent in 1995, in August 1995, the GSA issued a document entitled "Real Estate Tax Escalation Analysis." Id. In this document, the GSA included the special benefit district surcharge in the calculation of the rental adjustments pursuant to the tax adjustment clause. Id. Similar documents were issued by the GSA in 1996, 1999, 2000, and 2001. Id.

11. For lease years 1995 through 2001, the GSA's payment of additional rent pursuant to the tax escalation clause included the special benefit district surcharge. Compl. ¶ 19; Def. Answer ¶ 19.

12. By letter dated October 15, 2002, the GSA informed City Crescent:

> When calculating the current tax reimbursement, it was discovered that the prior years' tax analyses were computed incorrectly. The District Surcharge . . . is not a general real estate tax subject to escalation under the lease. . . . These calculations have resulted in an overpayment to the lessor in the amount of $311,522.

A68-69.

15. City Crescent challenged the GSA's interpretation of the lease and the GSA's right to recover monies paid by the GSA as a result of the surcharge. On June 1, 2004, the contracting officer issued the GSA's final decision denying City

Crecent's claim and concluding that the GSA was entitled to recoup $311,522.

Compl. Ex. 5.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

/s/ Michael J. Dierberg
MICHAEL J. DIERBERG
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Fl.
1100 L. St. NW
Washington, DC 20530
Telephone: (202) 353-0536
Facsimile: (202) 305-7643

Attorneys for Defendant

February 15, 2006