IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CITY CRESCENT LIMITED PARTNERSHIP, | ) | |
| Plaintiff, | ) | No. 05-580 |
| v. | ) | (Judge Wheeler) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO CITY CRESCENT'S
CROSS-MOTION FOR SUMMARY JUDGMENT, AND REPLY BRIEF
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

DEBORAH A. BYNUM
Assistant Director

MICHAEL J. DIERBERG
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Fl.
1100 L. St. NW
Washington, DC 20530

April 10, 2006

Attorneys for Defendant

# TABLE OF CONTENTS

PAGE(S)

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

DEFENDANT'S RESPONSE TO CITY CRESCENT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. An Obligation To Pay "Real Estate Taxes" Does Not Include An Obligation To Pay Special Assessments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. The Special Benefit District Surcharge Is A Special Assessment . . . . . . . . . . . . . . 5

A. The Application Of Maryland Law In Determining Whether The Surcharge Is Special Assessment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

B. City Crescent Does Not Contradict The Government's Contention That The Special Benefit District Surcharge Is Imposed Upon Only A Limited Group Of Property Owners In the City Of Baltimore . . . . . . . . . . 7

C. City Crescent Does Not Contradict The Government's Contention That The Property Owners Subject To The Surcharge Receive A Special Benefit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

D. City Crescent's Discussion Regarding Purported "Express" Special Assessments Is Misplaced . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

E. City Crescent Incorrectly Suggests That Special Assessments May Not Be Levied Upon An Ad Valorem Basis . . . . . . . . . . . . . . . . . . . . . . . . . 12

F. City Crescent Incorrectly Contends That Special Assessments May Not Fund A Variety Of Projects . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

G. City Crescent's Citation To Article 14, Section 1-11(a)(2) of the Baltimore City Code Is Misplaced . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

III. The Doctrines Of Waiver And Estoppel Do Not Bar The Government From Recouping Its Erroneous Payments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

TABLE OF AUTHORITIES

CASES PAGE(S)

2nd Roc-Jersey Assoc. v. Town of Morristown,
731 A.2d 1 (N.J. 1999) . . . . . passim

Aetna Casualty & Surety Co. v. United States,
526 F.2d 1127 (Fed. Cir. 1975) . . . . . 17

Allstate Mgmt. Corp. v. Grand Union Co.,
142 A.D.2d 344 (N.Y. App. Div. 1988) . . . . . 3

American National Bank & Trust Co. of Chicago v. United States,
23 Cl. Ct. 542, 550 (1991) . . . . . 18

BGK Main St. Operating Assoc., Ltd. P'ship, Inc. v. Gen. Serv. Admin., GSBCA 16238,
2004 WL 1352894 (2004) . . . . . 4

Carstens v. McLean,
7 F.2d 322 (9th Cir. 1925) . . . . . 3

L.P. Consulting Group, Inc v. United States,
66 Fed. Cl. 238 (2005) . . . . . 20

City of Seattle v. Rogers Clothing For Men, Inc.,
787 P.2d 39 (Wash. 1990) . . . . . 8, 15

Fed. Reserve Bank of St. Louis v. Metrocentre Improvement Dist. #1,
657 F.2d 183 (8th Cir. 1981) . . . . . 4

G & A Inc. v. Nahra,
514 N.W.2d 255 (Mich. Ct. App. 1994) . . . . . 3, 12

Hercules Inc. v. United States,
49 Fed. Cl. 80 (2001) . . . . . 19

Illinois Cent. R. Co. v. City of Decatur,
147 U.S. 190 (1893) . . . . . passim

Ittner v. Robinson,
52 N.W. 846 (Neb. 1892) . . . . . 3

TABLE OF AUTHORITIES (con't)

CASES PAGE(S)

Johnson v. Dalrymple,
123 S.W. 1020 (Mo. Ct. App. 1910) . . . . . . . . . . 3

Kendall v. Douglas,
820 P.2d 497 (Wash. 1991) . . . . . . . . . . 7

Litton Systems v. United States,
449 F.2d 392 (1971) . . . . . . . . . . 19

Maryland & P.R. Co. v. Nice,
45 A.2d 109 (Md. 1945) (examining the impact on the value of the rail road company's right of way in determining the validity of a special assessment) . . . . . . . . . . 8, 10

McDaniel Bros. Constr. Co., GSBCA 6973,
1984 WL 13462 (1984) . . . . . . . . . . 4, 5

Melrose Associates, L.P. v. United States,
43 Fed. Cl. 124 (1999) . . . . . . . . . . 18

Melrose Associates, L.P. v. United States,
45 Fed. Cl. 56 (1999) . . . . . . . . . . 18

Montgomery County v. Schultze,
489 A.2d 16 (Md. 1985) . . . . . . . . . . 7, 13

Niles Township v. Berrien County Board of Commissioners,
683 N.W.2d 148 (Mich. Ct. App. 2004) . . . . . . . . . . 13

Pokoik v. Incorporated Village of Ocean Beach,
143 A.D.2d 1021 (N.Y. App. Div. 1988) . . . . . . . . . . 8, 13

Pumphry v. County Comm'rs of Anne Arrundel County,
130 A.2d 297 (Md. 1957) . . . . . . . . . . 9

Riverside County Comm. Facilities Dist. No. 87-1 v. Bainbridge 17,
77 Cal. App. 4th 644 (1999) . . . . . . . . . . 7

St. Joseph Tp. v. Municipal Finance Commission,
88 N.W.2d 543 (Mich. 1958) . . . . . . . . . . 13

TABLE OF AUTHORITIES (con't)

CASES PAGE(S)

Stewart v. Fleming,
131 S.W. 955 (Ark. 1910) . . . . . . . . . . 3

Sulzer v. Montgomery County,
484 A.2d 285 (Md. Ct. Spec. App. 1984) . . . . . . . . . . 8

Summerfield Housing Ltd. P'ship v. United States,
42 Fed. Cl. 160 (1998) . . . . . . . . . . passim

Thompson v. First National Bank of Hollywood,
321 So.2d 466 (Fla. Dist. Ct. App. 1975) . . . . . . . . . . 3

United States v. Wurts,
303 U.S. 414 (1938) . . . . . . . . . . 17

V.F.W. v. Montgomery County,
115 A.2d 249 (Md. 1955) . . . . . . . . . . 8, 10

Walling Warehouse Co. v. Springhill Fuel Co.,
562 P.2d 1221 (Or. 1977) . . . . . . . . . . 3

Williams v. Anne Arundel County,
638 A.2d 74 (Md. 1994) . . . . . . . . . . passim

Wright Runstad Prop. Ltd. P'ship v. United States,
40 Fed. Cl. 820 (1998) . . . . . . . . . . passim

Zimmerman v. Memphis,
67 S.W.3d 798 (Tenn. Ct. App. 2001) . . . . . . . . . . 13, 14, 15

STATUTES AND REGULATIONS

48 C.F.R. § 552.270-24 . . . . . . . . . . 2

48 C.F.R. § 570.702-15 . . . . . . . . . . 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| CITY CRESCENT LIMITED PARTNERSHIP,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 05-580<br>(Judge Wheeler) |

DEFENDANT'S RESPONSE TO CITY CRESCENT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to the Court's order dated March 31, 2006, defendant, the United States, respectfully submits its response to plaintiff's cross-motion for summary judgment and reply brief in support of defendant's motion for summary judgment.

As we demonstrated in our initial brief, it is well established based upon precedent dating back more than a century, that a lease obligation to pay real estate taxes does not include an obligation to pay special assessments. Furthermore, this Court has previously examined the exact same lease provision in this case, and found that the lease provision is unambiguous and does not require the Government to pay for any portion of a special assessment. As we also demonstrated in our initial brief, the surcharge imposed upon City Crescent for the special benefit district of the central business district of Baltimore is a special assessment. Lastly, we demonstrated that the Government may not be estopped from recovering monies erroneously paid. City Crescent's opposition brief and cross-motion for summary judgment do not undermine these conclusions. Therefore, summary judgment in favor of the government is appropriate.

## ARGUMENT

I. An Obligation To Pay "Real Estate Taxes" Does Not Include An Obligation To Pay Special Assessments

In our opening brief, we demonstrated that, pursuant to more than 100 years of precedent, a lease obligation to pay real estate taxes does not include an obligation to pay for special assessments. Def. Br. at 6-11. Moreover, this Court in Wright Runstad examined the exact same lease provision at issue in this case, provided in the Federal Acquisition Regulations (FAR) at 48 C.F.R. § 552.270-24, and found that the lease provision is unambiguous and does not obligate the Government to pay for special assessments. Def. Br. at 7-8; Wright Runstad Prop. Ltd. P'ship v. United States, 40 Fed. Cl. 820, 826 (1998) (stating that it is "well established that special assessments are distinct from real estate taxes" and concluding that the lease did not obligate the Government to pay for special assessments). City Crescent has not provided any basis for rejecting the analysis of this Court regarding the same lease provision at issue in this case, nor precedent of other courts dating back more than 100 years regarding similar lease language.

In fact, City Crescent at times appears to concede that a lease obligation to pay the lessor's real estate taxes does not obligate the lessee to pay for special assessments. See e.g. Pl. Br. at 30 ("If anything, the defendant's cases further elucidate the distinction between the "property tax" at issue in this case and a "special assessment."). For example, although City Crescent distinguishes Wright Runstad by contending that Wright Runstad involved a special assessment and City Crescent believes this case does not, City Crescent does not dispute Wright Runstad's holding that the lease provision regarding real estate taxes in that case, which is the exact same provision in this case, does not obligate the lessee to pay for special assessments.

City Crescent does not contend that Wright Runstad was wrongly decided, nor that the numerous other decisions cited by the Government in our opening brief were wrongly decided.

To the extent that City Crescent suggests that the lease obligates the Government to pay for special assessments because the phrase "real estate taxes" in the lease is not preceded by the word "general", City Crescent is mistaken. Pl. Br. at 31. City Crescent is mistaken because the vast majority of cases cited by the Government did not relate to leases qualifying "real estate taxes," "taxes," or similar phrases with the word "general", yet the courts concluded that the leases do not require the lessee to pay for special assessments. Def. Br. at 8-9 (citing Ittner v. Robinson, 52 N.W. 846 (Neb. 1892) ("all taxes that may be assessed"); Carstens v. McLean, 7 F.2d 322, 323 (9th Cir. 1925) ("annual taxes"); Stewart v. Fleming, 131 S.W. 955, 957 (Ark. 1910) ("taxes"); Johnson v. Dalrymple, 123 S.W. 1020, 1023 (Mo. Ct. App. 1910) ("all taxes"); G & A Inc. v. Nahra, 514 N.W.2d 255, 256-57 (Mich. Ct. App. 1994) ("all of the real property taxes"); Allstate Mgmt. Corp. v. Grand Union Co., 142 A.D.2d 344, 346 (N.Y. App. Div. 1988) ("real estate tax assessment"); Walling Warehouse Co. v. Springhill Fuel Co., 562 P.2d 1221, 1222 (Or. 1977) ("increase in real estate taxes"); Thompson v. First National Bank of Hollywood, 321 So.2d 466, 467 (Fla. Dist. Ct. App. 1975) ("[T]he word 'taxes' and the term 'special assessments' are not synonymous and an agreement by the tenant to pay taxes is not an agreement to pay special assessments."). Furthermore, as we demonstrated in our initial brief, this is consistent with decisions in other contexts, including Supreme Court precedent, which have found that an obligation to pay "all taxation of every kind" or "real estate taxes" does not obligate the payment of special assessments. Def. Br. at 10 (citing Illinois Cent. R. Co. v. City of

Decatur, 147 U.S. 190, 190 (1893) ("all taxation of every kind"); Fed. Reserve Bank of St. Louis v. Metrocentre Improvement Dist. #1, 657 F.2d 183, 186 (8th Cir. 1981) ("real estate taxes").

Against this overwhelming precedent, including precedent from this Court addressing the exact same provision at issue in this case, City Crescent has cited to only one case which has found that a lease obligation to pay real estate taxes does not exclude special assessments. In BGK Main St. Operating Assoc., Ltd. P'ship, Inc. v. Gen. Serv. Admin., GSBCA 16238, 2004 WL 1352894 (2004), the GSBCA rejected the Government's argument that the same lease provision at issue in this case (also the same provision in Wright Runstad) excluded special assessments. Id.[1] In doing so, the board failed to recognize, let alone attempt to distinguish, the numerous cases cited above interpreting leases that do not contain the word "general" which find that the lease does not obligate the lessee to pay for special assessments. Id. Nor does the board even acknowledge that the Court of Federal Claims in Wright Runstad had previously interpreted the exact same lease provision, and found that the lease provision unambiguously does not obligate the Government to pay for special assessments. Id.

Moreover, the GSBCA's decision in BGK is at odds with its prior decision in McDaniel Bros. Constr. Co., GSBCA 6973, 1984 WL 13462 (1984). The GSBCA's decision in BGK suggests that McDaniel Bros. turned upon the inclusion of the word "general" in the lease, stating, "Because the language of the lease qualified taxes as 'general,' the Board [in McDaniel Bros.] considered sua sponte the distinction between general real estate taxes and special assessments on real property." Id. Contrary to this statement, although the lease provision in McDaniel Bros. referred to "general" real estate taxes, the board's decision was not based upon

---

[1] Publication page references are not available for this decision.

the inclusion of that word. Instead, the GSBCA treated the phrases "general real estate taxes" and "real estate taxes" as synonymous. Id. (recognizing the rule "that a lease provision that requires the lessee to assume the burden of taxes may not be generally read to require the tenant to also assume the burden of special assessments" (emphasis added); and citing in support of this rule Fed. Reserve Bank of St. Louis v. Metrocentre Improvement Dist. #1, 657 F.2d 183 (8th Cir. 1981), a case which referred only to "real estate taxes," not "general real estate taxes"). This is consistent with decisions of other courts, including the Supreme Court. See e.g. Illinois Cent. R. Co. v. City of Decatur, 147 U.S. 190, 197 (1893) (distinguishing between "taxes – or 'general taxes,' as they are sometimes called" and special assessments). For these reasons, this Court should follow its own precedent and the precedent of numerous courts going back more than a century by finding that a lease obligation to pay real estate taxes does not include an obligation to pay special assessments.

## II. The Special Benefit District Surcharge Is A Special Assessment

As we demonstrated in our opening brief, under Maryland law and the law of other jurisdictions, the surcharge in this case is a special assessment because: (1) it is imposed upon a limited group of property owners within the City of Baltimore, and (2) those property owners receive a benefit above and beyond that received by the general public for improvements and services funded by the special assessment. Def. Br. at 11-14. City Crescent does not provide any evidence contradicting either (1) or (2), and instead attempts to redefine the distinction between real estate taxes and special assessments. None of City Crescent's contentions provide a basis for denying the Government's motion for summary judgment.

A. The Application Of Maryland Law In Determining Whether The Surcharge Is A Special Assessment

As we demonstrated in our opening brief, this Court should look to Maryland law in determining whether the surcharge at issue in this case is a special assessment. Def. Br. at 11 (citing Summerfield Housing Ltd. P'ship v. United States, 42 Fed. Cl. 160 (1998)). City Crescent contests the application of Maryland law, by asserting that the definition of a special assessment under Maryland law is irrelevant because the applicable statutes and ordinances in this case allegedly do not refer to special assessments. Pl. Br. at 26. City Crescent's contention regarding the applicability of Maryland law is misplaced because it assumes the answer City Crescent would like to reach, namely that a special assessment is found merely by looking for the phrase "special assessment" in the statutes or ordinances, an erroneous assumption that we will address in a later section of this brief.

In any event, Maryland law is consistent with other jurisdictions. For example, as we demonstrated in our opening brief, under Maryland law, a special assessment is a charge imposed upon a limited group of property owners for services and improvements for which the property owners paying the charge receive a benefit above and beyond that received by the general public. Williams v. Anne Arundel County, 638 A.2d 74, 78 (Md. 1994). This is consistent with decisions by courts in other jurisdictions, for example: "[t]he special assessment is used to provide a combination of services and improvements that are intended and designed to benefit particular properties and demonstrably enhance the value and/or the use or function of the properties that are subject to the special assessment." 2nd Roc-Jersey Assoc. v. Town of Morristown, 731 A.2d 1, 7-9 (N.J. 1999); Illinois Cent. R. Co. v. City of Decatur, 147 U.S. 190, 197 (1893) (describing the distinction between taxes and special assessments).

B. City Crescent Does Not Contradict The Government's Contention That The Special Benefit District Surcharge Is Imposed Upon Only A Limited Group Of Property Owners In the City Of Baltimore

City Crescent does not contradict the Government's assertion that the surcharge in this case was assessed against a limited group of property owners of the City of Baltimore, namely the property owners within the special benefit district. Rather, City Crescent contends that the imposition of the surcharge upon the limited sub-region of the City of Baltimore is irrelevant, citing Riverside County Comm. Facilities Dist. No. 87-1 v. Bainbridge 17, 77 Cal. App. 4th 644 (1999), and Kendall v. Douglas, 820 P.2d 497, 503 (Wash. 1991). Pl. Br. at 34-35. Riverside County is inapposite because the case turns upon the unique characteristics of California law distinguishing between a "special tax" and a "special assessment" for determining whether property may be foreclosed upon for failure to pay the amount owed. 77 Cal. App. 4th at 647-59. City Crescent's citation to Kendall v. Douglas is also misplaced, because that case involved not a sub-region, but a super-region containing multiple counties. 820 P.2d 497, 503. Stated another way, all of the property owners within each county were subject to the property tax. This distinction is important because under Maryland law and the law of many other states, a tax or charge imposed upon a limited group of property owners within the city or county, which does not provide a benefit to the property owners subject to the tax or charge above that provided to the general public or other property owners, is impermissible. Montgomery County v. Schultze, 489 A.2d 16, 20 (Md. 1985) ("In order to justify a special assessment for a local improvement, however, there must be both a public purpose and a special benefit to the properties to be assessed over and above that accruing to the public."). Moreover, City Crescent's assertion is contrary to Maryland law and the law of other jurisdictions holding that one of the primary

characteristics which distinguishes a special assessment from real estate tax is that a special assessment is imposed upon a limited group of property owners. E.g. Williams v. Anne Arundel County, 638 A.2d at 78; Illinois Cent. R. Co. v. City of Decatur, 147 U.S. at 197.

C. City Crescent Does Not Contradict The Government's Contention That The Property Owners Subject To The Surcharge Receive A Special Benefit

City Crescent has not presented any facts which contradict the Government's contention that the property owners subject to the surcharge receive a special benefit over and above that received by the general public. As we demonstrated in our opening brief, Maryland law presumes that the property owners subject to the special assessment receive a special benefit above and beyond that provided to the general public. Def. Br. at 12 (citing V.F.W. v. Montgomery County, 115 A.2d 249, 254 (Md. 1955); Sulzer v. Montgomery County, 484 A.2d 285, 291 (Md. Ct. Spec. App. 1984); Summerfield Housing Ltd. P'ship v. United States, 42 Fed. Cl. at 170, n. 26). This is consistent with the law of other jurisdictions. See e.g. Pokoik v. Incorporated Village of Ocean Beach, 143 A.D.2d 1021, 1022 (N.Y. App. Div. 1988) (describing presumption under New York law); City of Seattle v. Rogers Clothing For Men, Inc., 787 P.2d 39, 45-46 (Wash. 1990) (presumption under Washington law).

City Crescent contends that it did not receive a special benefit from the special assessment, and attempts to support this contention with one affidavit. Pl. Prop. Find. ¶ 12; Pl. App. at 3. This affidavit is nothing more than a self-serving and conclusory assertion from the president of a company related to City Crescent, with no evidence provided to support the assertion. Pl. App. at 3 (affidavit of Otis Warren, stating "The City Crescent Building, however, has not received any specific benefits or capital improvements in exchange for its supplemental annual property tax payments . . .").

Furthermore, City Crescent's assertions based upon this portion of Mr. Warren's affidavit are misleading because the question is not whether City Crescent's property receives some "specific" benefits, but rather whether the property receives a benefit over and above that provided to the general public. The benefit to the properties doesn't have to be any more "specific" than a general increase in value arising from the additional improvements and services. Maryland & P.R. Co. v. Nice, 45 A.2d 109, 111 (Md. 1945) (examining the impact on the value of the rail road company's right of way in determining the validity of a special assessment); see also Williams v. Anne Arundel County, 638 A.2d at 83 ("The opinion of the property owner-affiant that the indirect costs associated with the special services in the District do not contribute to the value of homeowners' properties in the District is legally insufficient to defeat that presumption of validity."). For example, in Pumphry v. County Comm'rs of Anne Arrundel County, 130 A.2d 297 (Md. 1957), the court upheld a special assessment for garbage collection, stating, "it could hardly be argued that the value, and chances for rental, of the residential properties are not increased by a public disposal system." Id. at 300. Likewise, it can hardly be said that improvements and services provided by the surcharge for the special benefit district for the central business district of Baltimore do not increase the value of property in the special benefit district.

The other affidavit City Crescent provides does not contradict the Government's contention that the properties within the special benefit district receive a special benefit. In this affidavit, J. Kirby Fowler, president of the Downtown Partnership of Baltimore, and executive director of the Downtown Management Authority (DMA), does not contradict our contention that the property within the special benefit district receives a benefit above and beyond that

received by the public. He states that the "benefits provided by the DMA run to the general public." Pl. App. at 90. However, the fact that there are benefits to the general public from the services and improvements provided by the special assessment does not make it a tax rather than a special assessment, as it is also a requirement of Maryland law that special assessments benefit the public. The question is whether the services and improvements benefit the property subject to the special assessment above and beyond that received by the general public, and Mr. Fowler does not address this question.

Furthermore, it is with good reason that Mr. Fowler does not contradict our contention that the special benefit district surcharge provides a special benefit to those property owners within the district, because the lack of a special benefit would result in the district surcharge being invalid under Maryland law. V.F.W. v. Montgomery County, 115 A.2d 249, 251 (Md. 1955) (stating that it is firmly established in Maryland that in order to justify a special assessment, "there must be both a public purpose and a special benefit to the properties to be assessed over and above that accruing to the public."); Summerfield Housing Ltd. P'ship v. United States, 42 Fed. Cl. 160 (1998) (citing V.F.W. v. Montgomery County); Maryland & P.R. Co. v. Nice, 45 A.2d 109, 111 ("If the Legislature, or municipal officials acting as agents of the State, could impose upon certain private property the cost of a public improvement regardless of any special benefit accruing to the owner from such improvement, the guaranties for the protection of private property would be seriously impaired.").

D. City Crescent's Discussion Regarding Purported "Express" Special Assessments Is Misplaced

In its brief, City Crescent repeatedly refers to "express" special assessments. Pl. Br. at 15-16, 25, 27, 30, 32, 34. In essence, plaintiffs contend that the states and municipalities may

only create a special assessment by using the phrase "special assessment" in the statute or ordinance. This ignores the fact that special assessments are referred to by various terms by the courts and legislatures, and the precise words used do not supplant the nature of what is created. For example, Maryland courts have alternately referred to special assessments as a type of surcharge, a "special benefit tax," a "special community benefit assessment," a "special benefit assessment," or a "local assessment", to name just a few the terms used. Williams v. Anne Arundel County, 638 A.2d 74, 75-8 (Md. 1994).

Likewise, those who created the special assessment in this case used a variety of terms to describe the special assessment in this case, including "special benefits assessment," "assessment," and "improvement assessment". For example, Article II, § 61 of the Baltimore City Charter, in discussing the powers of the Downtown Management Authority, refers to the creation of "a special tax district or special benefits assessment district." Balt. City Chart. Art. II, § 61; Supp. App. at 8 (emphasis added). Article 14 of the Baltimore City Code, entitled "Special Benefit Districts," refers to the "assessment system" for the special benefit district. Balt. City Code Art. 14, § 1-2(e)(8), reproduced at A20. Article 14 also refers to the special assessment as a "supplemental tax" or "supplemental property tax," as opposed to the "property taxes assessed and collected by the City ("Regular Tax"). Article 14 also states regarding a lien on the property based upon the special assessment: "The lien shall take precedence over all other liens, whether created prior to or subsequent to the assessment, commensurate with a lien for state and county taxes, general municipal taxes, and prior improvement assessments . . ." Balt. City. Code Art. 14, § 1-15(f). The website of the Downtown Partnership of Baltimore, which oversees the Downtown Management Authority, refers to the special benefit district surcharge as a

"surcharge." A41-42; A45-47. The bills from the city of Baltimore which are the subject of dispute in this case have in capital letters at the top of the page "SPECIAL BENEFIT DISTRICT SURCHARGE." E.g. Def. Supp. App. at 2, 4, 6. Given the use of phrases such as "special benefits assessment, " "assessment," and "special benefit district surcharge" by those bodies creating and administering the special assessment, City Crescent's contention is misplaced.

Furthermore, City Crescent's contention that cases cited by the Government turn upon the existence of an "express" special assessment is incorrect. Pl. Br. at 30. Assuming that City Crescent means by "express" that the legislature explicitly used the words "special assessment," and only those words, in creating the special assessment, City Crescent fails to identify language in these opinions discussing, or relying upon, the language of the enabling legislation. For example, while City Crescent contends that Wright Runstad was based upon an "express" special assessment, there is nothing in the Court's opinion which would indicate the words used in creating the special assessment. See also G & A Inc. v. Nahra, 514 N.W.2d 255, 256-57 (Mich. Ct. App. 1994) (finding that lease obligating lessee to pay "all of the real property taxes" does not include an obligation to pay special assessments, and concluding that the surcharge in that case was a special assessment rather than a tax, without considering or referring to the words used in authorizing the special assessment); Williams v. Anne Arundel County, 638 A.2d at 75-7 (analyzing the validity of a special assessment which was authorized using a variety of terms similar to those used in creating and administering the special assessment in this case).

### E. City Crescent Incorrectly Suggests That Special Assessments May Not Be Levied Upon An Ad Valorem Basis

City Crescent suggests that while real estate taxes may be imposed upon an ad valorem basis, special assessments may not. Pl. Br. at 17, 29, 33. City Crescent's suggestion is incorrect

under Maryland law and the law of numerous other jurisdictions. Legislatures may impose special assessments in a number of ways, including an ad valorem basis. Montgomery County v. Schultze, 489 A.2d at 21 (upholding a special assessment based upon a front-foot benefit formula, stating, "[w]e agree that the mode of assessment is essentially a legislative matter"); Williams v. Anne Arundel County, 638 A.2d at 77, n. 4 (stating that special assessments "may be, but are not required to be, based upon ad valorem assessments."). Although City Crescent points out that the special assessment in Williams v. Anne Arundel County was not based upon an ad valorem basis, and therefore contends that this statement regarding the possible use of an ad valorem assessment was dicta, the court's statement is consistent with other jurisdictions whose municipalities created special assessments based upon an ad valorem basis. 2nd Roc-Jersey Assoc. v. Town of Morristown, 731 A.2d 1, 4 ("The overwhelming majority of these [Special Improvement Districts, or "SIDs" in New Jersey], like the Morristown SID, use real property value as the basis for determining SID special assessments."); Pokoik v. Incorporated Village of Ocean Beach, 143 A.D.2d 1021, 1022 (N.Y. App. Div. 1988) (analyzing special assessment assessed upon an ad valorem basis); Zimmerman v. Memphis, 67 S.W.3d 798, 800 (Tenn. Ct. App. 2001) (special assessment upon an ad valorem basis for a central business improvement district); Niagara Mohawk Power Corp. v. Town of Tonawand Assessor, 17 A.D.3d 1090, 1091 (N.Y. App. Div. 1988) (special assessment upon an ad valorem basis for garbage collection); Township v. Berrien County Board of Commissioners, 683 N.W.2d 148, 157 (Mich. Ct. App. 2004) (citing St. Joseph Tp. v. Municipal Finance Commission, 88 N.W.2d 543 (Mich. 1958), for the proposition that "using the value of the property to determine the benefit was proper and did not convert what otherwise was a special assessment into a tax.").

Likewise, City Crescent is mistaken in its contention that the manner of collection and the manner in which the surcharge is enforced are relevant in determining whether a particular charge is a special assessment. Pl. Br. at 30. A special assessment may be collected and enforced in the same manner as real estate taxes. See Williams v. Anne Arundel County, 638 A.2d at 77 (upholding special assessment which was "collected and enforced in the same manner as County real property taxes.").

F. City Crescent Incorrectly Contends That Special Assessments May Not Fund A Variety Of Projects

City Crescent states that unlike the situation in Wright Runstad, "Baltimore's 'supplemental annual property tax' is not linked to any specific government improvement, service, or benefit to any individual property." Pl. Br. at 17; see also Pl. Br. at 5 ("Individual Property Owners receive no specific services, benefits, or preferences in exchange for the supplemental annual property tax."). Plaintiff appears to be contending that a special assessment cannot fund more than one, or perhaps a few, improvements or projects. Contrary to City Crescent's Contention, there is no limitation under Maryland law, or the law of other jurisdictions, to the number of projects or services funded by the special assessment. See e.g. Williams v. Anne Arundel County, 638 A.2d at 77 (describing numerous authorized uses of funds from special assessment)[2]; Zimmerman v. City of Memphis, 67 S.W.3d 798, 799 (Tenn. App. 2001) (13 ongoing projects in one year in which the special assessment was imposed for the

[2] City Crescent attempts to distinguish Williams v. Anne Arundel County by claiming that in Williams, it would have been nonsensical for the court to have found the surcharge to be a "tax" because the proceeds from the surcharge went in part to pay taxes on acquired property for the special benefit district. Pl. Br. at 32. City Crescent provides no support for the proposition that tax proceeds may not be used to pay other taxes, and in any event, the court held that the special benefit district surcharge was a special assessment. Williams, 638 A.2d at 77-83.

central business improvement district). Furthermore, contrary to City Crescent's suggestion, the Government has never conceded that special assessments "typically" fund a single improvement. See Pl. Br. at 30. Given the widespread use of special benefit districts, and the use of special assessments in conjunction with these districts, one cannot say that it is "typical" to use a special assessment to fund a single improvement. See e.g. Baltimore City Code, Art. 14 § 1-2(d), A19 (describing the concept of a special benefit district and the widespread use of special benefit districts around the country).

City Crescent also suggests that any improvement funded by the special assessment must be in the form of physical improvements. Maryland law has not limited special assessments to physical improvements. For example, like the instant case, the special assessment in Williams v. Anne Arundel County funded a combination of physical improvements and services within a special benefit district, and the court specifically stated that special assessments may be used to fund services: "[S]pecial benefit assessments may also be used to finance the operating expenses of local government for services beneficial to property in an area." 638 A.2d at 78-9. Other states have also rejected contentions that a special assessment can only be used to fund physical improvements. 2nd Roc-Jersey Assoc. v. Town of Morristown, 731 A.2d 1, 8-9 (N.J. 1999) (rejecting contention that special assessments are limited to physical improvements; case involved special assessment for "advertising campaigns, meter bagging, street sweeping, the encouragement of tourism, hospitality guides, and business recruitment, as well as physical improvements, such as streetscape enhancement, supplemental lighting, and other aesthetic measures" within the special benefit district); City of Seattle v. Rogers Clothing For Men, Inc., 787 P.2d 39, 45-46 (Wash. 1990) (rejecting contention that special assessments are limited to

physical improvements; case involved special assessment used for "decorating and beautifying public places in the retail core area, sponsoring public events, advertising, maintaining information and directional signing for pedestrians, improving public relations, sweeping and cleaning sidewalks, cleaning and erasing graffiti, maintaining flowers and greenery, providing and cleaning litter receptacles and providing additional security" in special benefit district); Summerfield Housing Ltd. P'ship v. United States, 42 Fed. Cl. at 169-170 (finding that a surcharge for waste collection was a special assessment under Maryland law). In any event, the special assessment in this case funds not only services, but physical improvements as well. See Def. Prop. Find. at ¶ 7.

### G. City Crescent's Citation To Article 14, Section 1-11(a)(2) of the Baltimore City Code Is Misplaced

City Crescent erroneously draws significance from Article 14, Section 1-11 ("Other charges") of the Baltimore City Code, which states,

> (a) Properties subject to Supplemental Tax.
> (1) Properties within the District subject to the Supplemental Tax shall not be required to pay any other charges or fees for services generally provided within the District by the [Downtown Management] Authority.
> (2) However, the Authority may impose charges and fees for any special services requested and performed for 1 or more property owners.

Balt. City Code Art. 14, § 1-11(a); A28.

This portion of the Baltimore City Code merely addresses the ability of the Downtown Management Authority to impose other charges. City Crescent contends that the other charges permitted by paragraph (a)(2) are special assessments, and therefore finds that it would be duplicative for the City of Baltimore to use two different types of special assessments. Pl. Br. at

29. As an initial matter, it is interesting that City Crescent states that the "other" charges under paragraph (a)(2) would be special assessments, when that paragraph does not use the words "special assessment" as City Crescent implies is necessary for the creation of a special assessment. In any event, City Crescent's citation to Art 14, § 1-11 is unavailing because there is nothing prohibiting Baltimore from establishing a special assessment for a limited group of property owners, and permitting other special assessments for even smaller sub-groups. The fact that property owners may request to have imposed upon themselves a second special assessment for an even smaller sub-group is irrelevant.

## III. The Doctrines Of Waiver And Estoppel Do Not Bar The Government From Recouping Its Erroneous Payments

As we demonstrated in our opening brief, the Government may not be estopped from recovering monies erroneously paid. Def. Br. at 21 (citing Aetna Casualty & Surety Co. v. United States, 526 F.2d 1127, 1130 (Fed. Cir. 1975), United States v. Wurts, 303 U.S. 414, 415 (1938), and Wright Runstad, 40 Fed. Cl. at 827). In its brief, City Crescent attempts to distinguish cases such as Wright Runstad, which hold that the Government may not be estopped from recovering erroneous payments by contending that this case "involves an abrupt change in the GSA's interpretation of the Tax Adjustment Clause after seven years, a change that the GSA implemented only after CCLP renewed the Lease in reliance on the parties' original interpretation." Pl. Br. at 21. As we demonstrate below, however, this contention does not provide a valid basis for distinguishing the cases relied upon by the Government.

City Crescent's attempt to distinguish these cases is unavailing because it assumes facts which it cannot establish, namely that (1) the GSA's payment of the special assessment reflects the GSA's interpretation of the lease rather than an error, and (2) the contracting officer's letter

in 2001 identifying the error reflects a change in interpretation. Furthermore, the fact that the erroneous payments were spread over seven years does not prevent the Government from recovering the erroneous payment. If the Government had "not only the right but the duty to recover" one erroneous payment, the same should be true for subsequent erroneous payments. See American National Bank & Trust Co. of Chicago v. United States, 23 Cl. Ct. 542, 550 (1991) (holding that the Government could not be estopped from recouping 10 erroneous payments totaling more than $700,000, ).

In any event, City Crescent has not even attempted to demonstrate the elements of estoppel against the Government. See Melrose Associates, L.P. v. United States, 45 Fed. Cl. 56, 58-60 (1999) (outlining the necessary elements of estoppel against the Government). Likewise, City Crescent has failed to provide any basis for a claim of waiver. The doctrine of waiver is wholly inapplicable to this case because the doctrine of waiver involves the intentional relinquishment of a known right, Melrose Associates, L.P. v. United States, 43 Fed. Cl. 124, 149 (1999), but City Crescent cannot identify any right that was relinquished, intentionally or otherwise, by the Government.

The cases cited by City Crescent in support of its estoppel and waiver arguments are inapposite. First, City Crescent cites Roberts v. U.S. Great Am. Ins. Co., 174 Ct. Cl. 940, 952-53 (1966). Pl. Br. at 21. This case turned upon the doctrine of waiver, in which the court held that the Government intentionally relinquished its right to make an equitable adjustment under the changes clause of the contract by not failing to make the adjustment in a timely fashion. 174 Ct.

Cl. at 952-53. Because this case involved the relinquishment of a right, and the present case does not, Roberts is inapposite.[3]

City Crescent also analogizes the facts in the present case to Litton Systems v. United States, 449 F.2d 392 (1971). Pl. Br. at 22. In Litton Systems, the court held that Government cannot force a contractor to make a retroactive change in an incorrect cost allocation method if the contractor had a long and consistent use of the allocation method in question and the Government failed to give reasonably adequate notice that the Government would no longer approve of that method. Id. at 401. This case is inapposite because as this Court stated, "The Litton Systems rule is predicated on the fact that ASPR cost regulations do not prescribe exact accounting procedures for government contracts, but are subject to a standard of flexibility and reasonableness." Hercules Inc. v. United States, 49 Fed. Cl. 80, 93-94 (2001). In other words, Litton Systems turns upon the lack of precise accounting standards to be followed under the ASPR cost regulations, which is wholly inapposite to the present case.

City Crescent also attempts to overcome the precedent stating that Government may not be estopped from recovering erroneous payments by referring to the parties' renewal of the lease. Pl. Br. at 21. Because the lease renewal merely extended the term of the lease, the original terms of the lease govern except as modified within the supplemental lease agreement renewing the lease. There is nothing in this supplemental lease agreement which modifies the original terms of the lease so as to obligate the Government to pay City Crescent's special assessments. Furthermore, even if the rental period starting in 2003 had been established in an entirely new lease, the prior payment of the special assessment in the original lease could hardly constitute a

[3] While the Court refers to the Government being "estopped by an act of waiver," the case turned upon waiver principles, not estoppel. 174 Ct. Cl. at 952-53.

course of dealing supplying a term for the new lease period. Cf. L.P. Consulting Group, Inc v. United States, 66 Fed. Cl. 238, 241 (2005) (stating that the Government may waive a right through failing to enforce that right in a "great number" of prior contracts).

City Crescent also relies upon a lease status report submitted to City Crescent's lenders after the renewal. This lease status report does not assist City Crescent for a variety of reasons. First, City Crescent is essentially contending that this lease status report should result in equitable estoppel against the Government. However, City Crescent cannot show any of the elements of estoppel. For example, City Crescent cannot show that the contracting officer was aware about the error regarding the payment of the special assessment at the time that the contracting officer provided the lease status report. Furthermore, in Wright Runstad, this Court rejected a similar contention regarding a lease status report provided by the Government. 40 Fed. Cl. at 827.

Lastly, City Crescent contends that real estate tax analyses and a supplemental lease agreement reflect the parties' intent as to the tax escalation provision. City Crescent is incorrect because these documents reflect nothing more than the error in including the special assessment. Furthermore, because the terms of the lease are governed by their unambiguous meaning, and this Court has previously held that the exact lease language is unambiguous and does not obligate the Government to pay special assessments, Wright Runstad, 40 Fed. Cl. at 826, therefore, the Court need not, as City Crescent agrees, turn to extrinsic evidence to construe the meaning of the lease. See id. ("Since the Tax Adjustment clause plainly does not require GSA to pay special assessments like the Metro Tunnel assessment, the extrinsic evidence offered by plaintiff may not be considered.").

Even if the Court were to find the lease provision ambiguous, the Government's erroneous inclusion of the special assessment in the calculation of the real estate tax adjustment clause would have to be weighed against the GSA's clear expression in a 1984 memo that it will not pay such special assessments, see A71-72, and the GSA's own recognition of the error. A68-69. Furthermore, the extrinsic evidence in this case is of particularly little value in interpreting the tax adjustment clause, which was not drafted or separately negotiated by the contracting officer for this lease, but the standard lease provision issued by the GSA in the Federal Acquisition Regulations. 48 C.F.R. § 552.270-24 (1989). This lease provision is mandated in the same or substantially similar form by the FAR: "If the contracting officer determines tax escalation is necessary, a clause substantially the same as the clause at 552.270-24, Tax Adjustment, must be included in solicitations and contracts for leasehold interests in real property." 48 C.F.R. 570.702-15 (1989). In any event, as we have demonstrated, and as this Court has previously found, the Court need not look to extrinsic evidence because the lease provision is unambiguous and does not obligate the Government to pay special assessments. Wright Runstad, 40 Fed. Cl. at 826.

## CONCLUSION

Summary judgment in favor of the Government is appropriate because the unambiguous terms of the lease do not require the Government to pay for special assessments, and the special benefit district surcharge is a special assessment. Therefore, we respectfully request that this Court grant summary judgment in favor of the Government and deny City Crescent's motion for summary judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

/s/ Michael J. Dierberg
MICHAEL J. DIERBERG
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Fl.
1100 L. St. NW
Washington, DC 20530
Telephone: (202) 353-0536
Facsimile: (202) 307-0972

April 10, 2006

Attorneys for Defendant