**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CITY CRESCENT LIMITED PARTNERSHIP,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 05-580** |
| | ) | **(Judge Wheeler)** |
| **THE UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF CITY CRESCENT LIMITED PARTNERSHIP'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

Respectfully Submitted By:

Robert G. Watt, Esq.
Christopher M. Anzidei, Esq.
Watt, Tieder, Hoffar & Fitzgerald, LLP
8405 Greensboro Drive, Suite 400
McLean, VA 22102

Attorneys for Plaintiff City Crescent Limited Partnership

## Table of Contents

Page

Argument ..... 1

I. The Defendant Misconstrues BGK and Wright Runstad. ..... 2

II. The Defendant's Contentions Related to the Legislative Intent of the Supplemental Annual Property Tax Ordinance Lack Merit. ..... 4

III. The Supplemental Annual Property Tax's Purpose—to Pay for Enhanced "Clean and Safe" Services for the General Public—Belies the Defendant's Erroneous Attempt to Characterize this Tax as a Special Assessment. ..... 7

IV. The Defendant's "Erroneous Payment" Argument Is Not Compelling. ..... 11

Conclusion ..... 12

## Table of Authorities

Page

**Cases**

BGK Main Street Operating Associates Limited Partnership, Inc. v. General Services Administration, GSBCA No. 16238, 04-2 BCA ¶ 32,658 at 161,652, 2004 WL 1352894 (2004) .......... 2, 3, 4

Craft Machine Works, Inc. v. United States, 926 F.2d 1110 (Fed. Cir. 1991) .......... 12

Cramp Shipbuilding Co. v. United States, 122 Ct. Cl. 72 (1952) .......... 12

Illinois Cent. R. Co. v. City of Decatur, 147 U.S. 190 (1893) .......... 8

Litton Sys., Inc. v. United States, 196 Ct. Cl. 133 (1971) .......... 12

Montgomery County v. Schultze, 489 A.2d 16 (Md. 1985) .......... 9

Maryland & P.R. Co. v. Nice, 45 A.2d 109 (Md. 1945) .......... 10

Pumphrey v. County Comm. of Anne Arundel County, 130 A.2d 297 (Md. 1957) .......... 10

Williams v. Anne Arundel County, 638 A.2d 74 (Md. 1994) .......... 10

Wright Runstad Properties Limited Partnership v. United States, 40 Fed. Cl. 820 (1998). .......... 2, 3, 4, 8

**Statutes and Regulations**

Baltimore City Code Art. 14, § 1 .......... passim

Baltimore City Charter Article II, § 61(b)(1) .......... 5

GSAR 552.270-24 .......... 1, 2, 3

Md. Code, *Tax-Prop.*, § 5-102(a) (2006) .......... 9

## Argument

Summary judgment must be granted to City Crescent Limited Partnership because the parties' Lease requires the GSA to pay additional rent for "increases in real estate taxes," Lease at § 3.4 (GSAR 552.270-24), and the "supplemental annual property tax" imposed under Baltimore City Code Art. 14 § 1-10(a) is manifestly a "real estate tax." The underlying facts are not in dispute, albeit both parties have challenged the inferences and legal conclusions that should be drawn from these facts. It is undisputed that the taxes at issue total $311,522.58 for the period covering tax years 1995/1996 through 2001/2002 and $182,868.10 for the period covering tax years 2002/2003 through 2005/2006; City Crescent also seeks a declaratory judgment that the supplemental annual property taxes must be accounted for in future calculations under the Tax-Adjustment Clause through the remainder of the Lease.

The common thread running through both the defendant's initial brief and its response is that the defendant aims to sidestep this tax ordinance rather than apply it. The defendant does not attempt to explain legislative intent—instead, it merely quotes a few snippets from the tax ordinance out of context. The defendant does not examine the purpose of the tax ordinance—instead, it persists in straw-man logic that assumes a special assessment is at issue. We are not dealing here with the validity of a special assessment, and the defendant's belaboring of the prerequisites for and legal treatment of special assessments is beside the point. This case involves a tax—Baltimore's supplemental annual property tax—that is reimbursable under the Lease's Tax-Adjustment Clause, and the defendant's arguments, to the extent at all relevant, only provide a further basis to distinguish this real estate tax from a special assessment.

## I. The Defendant Misconstrues BGK and Wright Runstad.

In Section I of its brief, the defendant misconstrues the two cases that are directly on point, cases that underscore the importance of legislative intent in distinguishing real estate taxes from special assessments, BGK Main Street Operating Associates Limited Partnership, Inc. v. General Services Administration, GSBCA No. 16238, 04-2 BCA ¶ 32,658 at 161,652, 2004 WL 1352894 (2004), and Wright Runstad Properties Limited Partnership v. United States, 40 Fed. Cl. 820 (1998). These are the only two decisions that distinguish "real estate taxes" from "special assessments" under the Tax-Adjustment Clause in GSAR 552.270-24, and both cases support City Crescent's interpretation.

First, the defendant has mistakenly characterized BGK as an outlier case, and it incorrectly contends that this case involves a "special assessment" that was held to be reimbursable under the GSA's Tax-Adjustment Clause. The defendant misinterprets BGK. As in the present case, BGK involved a city ordinance that created a "Downtown Service District" and "levied an additional tax on taxable real property and improvements subject to local taxation located in the Downtown Service District . . . ." Id., 04-2 BCA ¶ 32,658 at 161,653 (quoting Norfolk City Code § 24-212.4) (emphasis added). The Board construed "the clear and unambiguous language" of this tax ordinance—language that is nearly identical to Baltimore's supplemental annual property tax ordinance—and held that this "real estate tax" was reimbursable under the GSA's Tax-Adjustment Clause. Id. at 161,654. In so holding, the Board rejected two erroneous contentions made by the GSA, which are similar to the defendant's arguments in the present case: (i) that the Norfolk ordinance imposed a "special

assessment;" and (ii) that only "general" real estate taxes are covered by the Tax-Adjustment Clause. Id. BGK is squarely on point, and its logic dictates that Baltimore's nearly identical supplemental annual property tax should be reimbursable under the same Tax-Adjustment Clause.

Second, the defendant misinterprets Wright Runstad, the rationale of which further supports City Crescent. Unlike the present case, Wright Runstad involved an express special assessment against the lessor's property to pay for the construction of an adjacent tunnel project. The lessor was constrained to argue that the express special assessment should be treated as something else under the tax-adjustment clause: "a real estate tax in disguise." 40 Fed. Cl. at 826. The Court rejected this argument, relying upon the clear intent of the special assessment and the plain language of the tax-adjustment clause. Id. As in BGK, the governing principle behind Wright Runstad is that the intent of the particular legislative enactment must dictate whether a particular charge is a reimbursable real-estate tax under GSAR 552.270-24.

The defendant no doubt understands the import of the Court's reasoning in Wright Runstad, which may explain why it disputes City Crescent's observation that Seattle had levied an express "special assessment" in that case. The defendant contends that "there is nothing in the Court's opinion which would indicate the words used in creating the special assessment." Def. Mem. at 12. As the defendant should be aware, however, Seattle did impose an express special assessment to fund its tunnel project in Wright Runstad. In fact, the defendant's summary-judgment filing in that case included a copy of the actual "Special Benefit Assessment Report." Id., Case No. 97-27C, Def. Proposed Findings of Uncontroverted Fact at ¶¶ 5-7 and Appendix at

Ex. 2 ("Local Improvement District Special Benefits Assessment Report, Downtown Seattle Transit Project, June 1987") (filed on Sept. 26, 1997). The relevant excerpts from the defendant's papers in Wright Runstad are attached as an Appendix to this Reply.

In sum, this Court rejected the lessor's characterization of a special assessment as a "real estate tax in disguise" in Wright Runstad. Here, we have the flip-side of Wright Runstad, as it is the defendant/lessee that erroneously seeks to transform an express property tax into a special assessment. Based upon its reasoning in Wright Runstad and the Board's treatment of an identical tax in BGK, this Court should find that Baltimore's supplemental annual property tax is reimbursable under the Lease.

## II. The Defendant's Contentions Related to the Legislative Intent of the Supplemental Annual Property Tax Ordinance Lack Merit.

Whether under federal law (which governs the parties' Lease) or Maryland law, the legislative intent of the supplemental annual property tax ordinance is paramount. Our opening brief demonstrated that a statute's plain language is the best evidence of legislative intent and that terms-of-art with distinct meanings should not be utilized interchangeably. Here, the Baltimore ordinance imposes a "supplemental annual property tax, levied on all properties subject to real property taxation." Baltimore City Code Art. 14, § 1-10(a). The established distinction between taxes and special assessments only bolsters the case for interpreting this ordinance as written.

Although the defendant has not challenged the fundamental principles of statutory construction outlined in our opening brief, it violates these principles by looking everywhere except the relevant statutory language in arguing legislative intent. The defendant's response brief cobbles together disparate statutory references,

unpersuasively arguing that Baltimore's supplemental annual property tax should not be treated as a tax. These statutory references offered by the defendant actually amplify the soundness of City Crescent's statutory interpretation.

First, the defendant refers to the enabling legislation for the Downtown Management Authority, which states that "[a]s provided by ordinance, the Authority may have the power [] to be a special tax district or special benefits assessment district ...." Baltimore City Charter Article II, § 61(b)(1). This distinction is significant. And it supports City Crescent's interpretation. In accordance with the City Charter, Baltimore was empowered to choose between two mechanisms to finance the Downtown Management District, and it opted to create a "special taxing district" rather than a "special benefits assessment district." Art. 14 §§ 1-4(b), 1-10(a). Thus, the enabling legislation lends no support to the defendant's argument.

Second, while the defendant notes that the statute refers to an "assessment" in Article 14 §§ 1-2(e)(8) and 1-15(f), the defendant fails to acknowledge that the bare term "assessment" (without the modifier "special") refers to the manner in which all real estate taxes are collected. This well-established distinction is evident from, among other places, Article 14 § 1-10(b), which provides that the supplemental annual property tax "shall be assessed and collected in conjunction with the property taxes assessed and collected by the City (the "Regular Tax")...." Id. (emphasis added). Thus, statutory references to the bare term "assessment" do not advance the defendant's cause in arguing that the supplemental annual property tax should be treated as a special assessment. What is relevant, however, is that the ordinance expressly describes the disputed tax as a "property tax" and nowhere uses the term "special assessment."

Third, the defendant notes that the ordinance distinguishes the "Regular Tax," i.e., existing City and State property taxes, from the "Supplemental Tax," i.e., the "supplemental annual property tax." Baltimore City Code Art. 14, § 1-10(a), (b). That both terms are explicitly defined in the statute as "Taxes," however, is additional proof that the supplemental annual property tax is intended to be another real estate tax, akin to other City and State property taxes. It is also significant that Baltimore treats these taxes similarly, as the supplemental annual property tax is assessed, collected, and enforced in the same manner as other property taxes. See id. at § 1-10(b). Finally, any purported distinction between a "Regular Tax" and a "Supplemental Tax" is not relevant here because the parties' Lease does not utilize the GSA's alternate Tax-Adjustment Clause, which limits the GSA's tax liability to "*general* real estate taxes" (as was the case in the McDaniel Brothers decision cited by the defendant).

Fourth, it is ironic that the defendant dismisses the import of the precise statutory language enacted in Section 1-10 and instead urges that legislative intent should be discerned from a reference to "district surcharge" that appears on the Downtown Partnership of Baltimore's website and on the tax bills. Any import ascribed to this reference cannot contravene the actual statutory language enacted by the Baltimore City Council. None of the provisions in Article 14, Section 1 define, utilize, or even refer to a "district surcharge," let alone a "special assessment." Nor has the defendant demonstrated why it contends that a "district surcharge" is synonymous with a "special assessment."

Finally, the defendant's argument is inconsistent with Section 1-11(a)(2) of the ordinance, which empowers the Authority to "impose charges and fees for any special

services" provided to property owners. Id. The ordinance's legislative findings refer to the need for these "charges" in addition to the need for "new taxes." Id. at § 1-2(d)(1), (3). If there were any basis to construe the ordinance as authorizing special assessments, it would be these additional charges—not the supplemental property taxes—that would constitute the special assessment. In his affidavit, Mr. Fowler (the Authority's Executive Director) explained that the charges authorized by Section 1-11 are utilized when an individual property owner obtains specific services or benefits from the Authority. See Pl. Appendix at 90 (Fowler Affidavit at ¶ 6). The Authority's supplemental "clean and safe services" funded by the supplemental annual property tax, on the other hand, are provided for the benefit of the general public. See id. Lacking any meaningful explanation for these additional charges, the defendant can only speculate that Section 1-11 might operate as a second special-assessment mechanism "for even smaller sub-groups." The defendant, in sum, has not offered a meaningful alternate explanation of the legislative intent of the supplemental annual property tax ordinance and has provided no statutory basis for its treatment of this express tax as a disguised special assessment.

**III. The Supplemental Annual Property Tax's Purpose—to Pay for Enhanced "Clean and Safe" Services for the General Public—Belies the Defendant's Erroneous Attempt to Characterize this Tax as a Special Assessment.**

The defendant's attempt to recast the supplemental annual property tax as a de facto special assessment is also belied by the use of this revenue to provide supplemental "clean and safe" services for the general public in the downtown area. Even the defendant's cases recognize that taxes are used to raise revenue for general governmental services whereas special assessments are used to impose the cost of

local improvements upon the particular portion of a community that will be specifically benefited in the form of increased property values. See, e.g., Illinois Cent. R. Co. v. City of Decatur, 147 U.S. 190, 197-98 (1893). The rationale behind excluding special assessments from reimbursement under tax-adjustment clauses is that the lessor, as owner of the reversion, should pay for improvements that benefit the premises rather than the leasehold. Wright Runstad, 40 Fed. Cl. at 825.

Here, the supplemental annual property tax ordinance provides that this tax is utilized to fund traditional governmental "clean and safe" services. The ordinance identifies the District's needs for supplemental public services because it is a center for employment and tourism and thus receives a high influx of visitors. Baltimore City Code Art. 14 §§ 1-2(b), (c), (d)(3). Given the ordinance's intended purpose, it cannot be argued that these services benefit the premises rather than the leasehold. Nor has the defendant identified any special improvements or benefits that have inured to City Crescent and other landowners within the District in exchange for the supplemental annual property tax.

Advancing a straw-man argument that assumes the tax is a "special assessment," the defendant awkwardly attempts to shoehorn our facts into its discussion of the two characteristics of special assessments. The defendant baldly asserts that the entire Downtown Management District constitutes a "limited group of property owners" and conveniently explains that this group should be presumed to have received unspecified "special benefits" from the supplemental annual property tax. Def. Mem. at 7-10. This argument is overreaching.

First, Section II.B of the defendant's response incorrectly characterizes the entire Downtown Management District as a "limited group of property owners" who have received a special assessment. Def. Mem. at 7. Under the defendant's flawed reasoning, any tax imposed upon a sub-region within a municipality would per se become a special assessment. Yet Maryland law plainly authorizes taxation not only at the State and County level, but also by municipal corporations and tax districts, see, e.g., Md. Code, *Tax-Prop.*, § 5-102(a) (2006), and the defendant has not even attempted to argue that sub-regional tax districts are per se invalid in Maryland. The defendant cites to Montgomery County v. Schultze, which offers no support for its position. Schultze involved the propriety of the front-foot method for calculating the amount of a special assessment that had been levied against property owners to cover the construction costs of an adjacent road project. 489 A.2d 16 (Md. 1985).

Second, in Section II.C of the defendant's response, it incorrectly suggests that the City Crescent Building and other properties within the Downtown Management District receive special benefits over and above those received by the general public. The defendant is compelled to make this argument because "[a] special assessment is a special charge imposed by law on real property to defray the expense of a local municipal improvement. * * * [T]he special benefit must be in excess of, or different from the benefit inuring to the general public." Schultze, 489 A.2d at 20.

Here, the defendant cannot identify any special benefits inuring to the City Crescent Building or other District property owners that differ from or exceed those received by the general public. Instead, the defendant's response unfairly quibbles with the wording of City Crescent's affidavits. According to the defendant, Mr. Fowler's

statement that the benefits "run to the general public" does not speak to the issue of benefits running to individual property owners. This quibbling by the defendant is unpersuasive because a service that is given to everyone in the entire district, i.e., enhanced "clean and safe" services, cannot logically be characterized as a special benefit to certain individuals. In sum, the Court should take the affidavit of Mr. Fowler at face value, and the defendant does not dispute his statement that the supplemental annual property tax is utilized to augment "clean and safe" governmental services for the users of the downtown area. See Fowler Affidavit at ¶¶ 5-7. Similarly, the affidavits of Messrs. Fowler and Warren reiterate that no specific services, benefits, or improvements inure to City Crescent or other individual property owners arising from the tax. Id. at ¶ 6, 9; Warren Affidavit at ¶ 7.

Finally, the defendant's reliance upon Nice, Williams and Pumphrey is misplaced. In Nice, the court upheld the validity of a special assessment for paving repairs that was charged against adjacent property owners. 45 A.2d 109. In Williams, the court found that a community could validly impose a charge upon itself for improvements and services on community-owned property. 638 A.2d 74. In Pumphrey, the court rejected a constitutional challenge to a county statute that was amended to convert a garbage tax into a special assessment. 130 A.2d 297. In these cases, there were specific benefits provided to limited groups of property owners—fixing an adjacent road, maintaining community-owned property, a weekly garbage collection—and no argument could be made that these benefits inured to the general public. Here, in contrast, the inescapable conclusion is that the supplemental "clean and safe" services funded by the supplemental annual property benefit the general public. To presume a special benefit

to City Crescent in this case would transform every governmental service into a "special benefit" and thus every tax into a special assessment.

The defendant's remaining arguments in Sections II.E and II.F are also easily dismissed because they are beside the point. In Section II.E, the defendant argues that Maryland has utilized several methods to calculate special assessments and that other jurisdictions have imposed special assessments that were calculated on an *ad valorem* basis. This adds nothing to the debate, except perhaps to suggest the hasty generalization that all *ad valorem* levies are special assessments, which, of course, would again transform every tax into a special assessment. The defendant also argues in Section II.F that special assessments may fund more than one project. While City Crescent has not maintained otherwise, the flaw in the defendant's position is its failure to identify *any* specific projects that benefited City Crescent over and above the general public.

## IV. The Defendant's "Erroneous Payment" Argument Is Not Compelling.

Finally, just as the defendant's response seeks to avoid the plain language of the supplemental annual property tax statute, its brief ignores the GSA's initial interpretation of its liability for the supplemental annual property tax. As shown in our opening brief, the parties' contemporaneous interpretation of a contract should be given great weight. It is undisputed that the GSA paid the tax for seven years before announcing a policy reversal in its letter dated October 15, 2002. A year earlier, however, City Crescent had already relied upon the GSA's payment of the supplemental annual property tax in calculating the GSA's new base rent for the fifteen-year extension of the Lease term.

This case does not involve purported erroneous payments. Rather, the GSA retroactively changed its policy after paying the supplemental annual property tax for seven years and after negotiating a new annual rent for the extended Lease term that was premised upon its payment of this tax. The present case is similar to Litton, where the government was precluded from applying its new interpretation of acceptable cost-accounting methods to contracts already in existence. Id., 196 Ct. Cl. at 148-49. A contract reflects a negotiated bargain, and "a contract can hardly mean one thing today and another tomorrow." Cramp Shipbuilding Co. v. United States, 122 Ct. Cl. 72, 97 (1952); accord Craft Machine Works, Inc. v. United States, 926 F.2d 1110 (Fed. Cir. 1991). Here, the correct result given the intent of Baltimore's supplemental annual property tax ordinance is also the fair result given the GSA's abrupt reversal in policy after it had secured City Crescent's commitment to extend the Lease through 2018.

**Conclusion**

City Crescent respectfully requests that summary judgment be entered in its favor and that damages be awarded in the amount of $494,390.68, plus interest and a declaration that the GSA must include the supplemental annual property tax in future calculations under the Tax-Adjustment Clause.

Dated: April 24, 2006

Respectfully submitted,

City Crescent Limited Partnership

By Counsel

s/Robert G. Watt, Esquire
Robert G. Watt, Esquire
Christopher M. Anzidei, Esquire
Watt, Tieder, Hoffar & Fitzgerald, LLP
8405 Greensboro Drive, Suite 100
McLean, Virginia 22102
(703) 749-1000 (phone)
(703) 893-8029 (fax)