**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **CITY CRESCENT LIMITED PARTNERSHIP,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE UNITED STATES OF AMERICA,**<br><br>**Defendant.** | **Case No. 05-580**<br>**(Judge Wheeler)** |

**APPENDIX TO PLAINTIFF CITY CRESCENT LIMITED PARTNERSHIP'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

Respectfully Submitted By:

Robert G. Watt, Esq.
Christopher M. Anzidei, Esq.
Watt, Tieder, Hoffar & Fitzgerald, LLP
8405 Greensboro Drive, Suite 400
McLean, VA 22102

Attorneys for Plaintiff City Crescent Limited Partnership

ORIGINAL

FILED
SEP 26 1997
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

WRIGHT RUNSTAD PROPERTIES LIMITED PARTNERSHIP,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

No. 97-27C
(Judge Merow)

DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS

1. On August 30, 1989, 1111 Third Avenue, a partnership consisting of GRC Properties, 1111 Third Avenue Limited, and Wright Runstad & Company, as lessor, entered into a ten-year lease with the General Services Administration for 62,000 net useable square feet of office storage and related space on the 6th, 7th, 8th, and 9th floors of the 1111 Third Avenue Building in Seattle, Washington. Pl. Br. 1.[1]

2. Pursuant to paragraph 10 of the lease, the rent is subject to adjustments as provided by the Real Estate Tax Escalation provisions of paragraph 20 of the Solicitation for Offers. PSRF 1.

3. Paragraph 20 of the Solicitation for Offers provides, in part, as follows:

20 Tax Adjustment GSAR 552.270-24 (June 1985)

---

"Pl. Br. __" is a citation to the brief filed by plaintiff in conjunction with its pre-trial filings. "PSRF" is a citation to plaintiff's statement of relevant facts filed in conjunction with plaintiff's pre-trial filings. "Def. App. __" is a citation to the appendix attached to defendant's motion for summary judgment..

> share of increases in real estate taxes paid for the calendar year in which its lease commences (base year). Payment will be in a lump sum and become due on the first workday of the month following the month in which paid tax receipts for the base year and the current year are presented, or the anniversary date of the lease, whichever is later.

Def. App. Exh. 1.

4. During the first years of the lease, the Municipality of Metropolitan Seattle constructed and put into operation a "Metro Tunnel." The project was partially funded by formation of a local improvement district (LID) in the downtown Seattle, Washington, area. Pl. Br. 2.

5. Metro commissioned a special benefit assessment study of downtown Seattle to estimate the special benefits accruing to downtown property as a result of the tunnel project. Def. App. Exh. 2.

6. The study was performed by Shorett & Reily, real estate appraisers & consultants. The special benefit study was designed to estimate benefits on a parcel-by-parcel basis, and to allocate a total LID assessment of $20 million across downtown properties in proportion to the special benefit accrued to each property. Id.

7. On January 24, 1992, a bill was sent by Kings County to Wright Runstad entitled "Statement of Local Improvement assessments." Def. App. Exh. 3. The bill indicated that the assessment represented Wright Runstad's assessment as part of the Metro Tunnel LID. It was in the amount of $27,747.91 for installment No. 1 or $230,521.08 for the assessment in full including interest to date. Id.

8. Wright Runstad apparently chose to pay the assessment in full. In a check dated March 13, 1992, Wright Runstad paid the King County Finance Division, $230,521.08. The description portion of the check contained language indicating that this was payment for the Metro tunnel LID. Def. App. Exh. 4.

9. Wright Runstad timely forwarded its tax bills for 1991, 1992, and 1993, including the Metro Tunnel LID assessment bill, to the GSA office administering the lease. Pl. Br. 3. The Government erroneously paid Wright Runstad a percentage of the Metro Tunnel LID assessment proportionately equal to the percentage of space in the property occupied by the Government. Def. App. Exh. 5.

10. In 1995, Anthony Richard Gordon was assigned responsibility as CO for the Wright Runstad building. Def. App. Exh. 6. Shortly thereafter, he performed an audit of the lease and determined that GSA wrongfully had paid the fees associated with the LID special assessment. Id.

10. Mr. Gordon notified Wright Runstad that the payment attributable to the special assessment had been erroneous and that Wright Runstad would have to refund this payment to GSA. Def. App. Exh. 7. When Wright Runstad declined to refund the money, GSA withheld the amount in controversy from the rent otherwise due Wright Runstad. Def. App. Exh. 8.

Respectfully submitted,

FRANK W. HUNGER
Assistant Attorney General

DAVID M. COHEN
Director

KATHYRYN A. BLEECKER
Assistant Director

HILLARY A. STERN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 "L" Street
Washington, D.C. 20530
Tele: (202) 307-0282

September 26, 1997

Attorneys for Defendant

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WRIGHT RUNSTAD PROPERTIES LIMITED PARTNERSHIP, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 97-27C (Judge Merow) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant respectfully moves the Court for summary judgment pursuant to RCFC 56 upon the grounds that there are no genuine issues of material fact and defendant is entitled to judgment as a matter of law. In support of this motion, we rely upon the allegations set forth in the complaint, the following brief with attached appendix, and our proposed findings of uncontroverted fact, filed under separate cover.

DEFENDANT'S BRIEF

Nature of the Case

Plaintiff, Wright Runstad Properties Limited Partnership (Wright Runstad), owner of a building in Seattle, Washington, leased to the General Services Administration (GSA), challenges the contracting officer's (CO) decision to retroactively disallow Wright Runstad's claim for reimbursement of a local improvement district (LID) special assessment based upon the CO's conclusion that the clause in the lease providing for payment of real estate taxes by GSA did not require GSA to pay LID special assessments.

STATEMENT OF FACTS

On August 30, 1989, 1111 Third Avenue, a partnership consisting of GRC Properties, 1111 Third Avenue Limited, and Wright Runstad & Company, as lessor, entered into a ten-year lease with the General Services Administration for 62,000 net useable square feet of office storage and related space on the 6th, 7th, 8th, and 9th floors of the 1111 Third Avenue Building in Seattle, Washington. Pursuant to paragraph 10 of the lease, the rent was subject to adjustments as provided by the Real Estate Tax Escalation provisions of paragraph 20 of the Solicitation for Offers.

Paragraph 20 provides, in part, as follows:

20 Tax Adjustment GSAR 552.270-24 (June 1985)

> (A) the Government shall pay additional rent for its share of increases in real estate taxes paid for the calendar year in which its lease commences (base year). Payment will be in a lump sum and become due on the first workday of the month following the month in which paid tax receipts for the base year and the current year are presented, or the anniversary date of the lease, whichever is later.

During the first years of the lease, the Municipality of Metropolitan Seattle constructed and put into operation a "Metro Tunnel." The project was partially funded by formation of a LID in the downtown Seattle area. Metro commissioned a special benefit assessment study of downtown Seattle to estimate the special benefits accruing to downtown property as a result of the tunnel project.

The study was performed by Shorett & Reily, real estate

appraisers & consultants. The special benefit study was designed [illegible] a total LID assessment of $20 million across downtown properties in proportion to the special benefit accrued to each property.

On January 24, 1992, a bill was sent by Kings County to Wright Runstad entitled "Statement of Local Improvement assessments." The bill indicated that it represented Wright Runstad's portion of the Metro Tunnel LID assessment. It was in the amount of $27,747.91 for installment No. 1 or $230,521.08 for the assessment in full including interest to date. Wright Runstad apparently chose to pay the assessment in full. In a check dated March 13, 1992, Wright Runstad paid the King County Finance Division, $230,521.08. The description portion of the check contained language indicating that this was payment for the Metro tunnel LID.

Wright Runstad timely forwarded its tax bills for 1991, 1992, and 1993, including the Metro Tunnel LID assessment bill, to the GSA office administering the lease. The Government erroneously paid Wright Runstad a percentage of the Metro Tunnel LID assessment proportionately equal to the percentage of space in the property occupied by the Government.

In 1995, Anthony Richard Gordon was assigned responsibility as CO for the Wright Runstad building. Shortly thereafter, he performed an audit of the lease and determined that GSA wrongfully had paid the fees associated with the LID special assessment. Mr. Gordon notified Wright Runstad that the payment

# DEFENDANTS' EXHIBITS

## INDEX TO APPENDIX


| ITEM | EXHIBIT |
|---|---|
| Solicitation for Offers | 1 |
| Local Improvement District Special Benefit Assessment Report | 2 |
| Statement of Local Improvement Assessments | 3 |
| Check to King County Finance Division | 4 |
| Letter dated April 20, 1994, to Wright Runstad from GSA | 5 |
| Various pages from deposition of Anthony Ricardo Gorden | 6 |
| Letter dated OCTOBER 19, 1995, to Wright Runstad from Anthony Rick Gorden | 7 |
| Letter dated November 14, 1995, from Wright Runstad Company to Anthony Rick Gorden | 8 |
| GSA Form 620, indicating reimbursement to Government of 1992 tax overpayment | 9 |



# Local Improvement District

# Special Benefit Assessment Report

METRO

Downtown Seattle Transit Project

June 1987

Municipality of Metropolitan Seattle

June 26, 1987

Dear Property Owner:

As you know, for the last year the Municipality of Metropolitan Seattle has been engaged in work preparatory to the creation of a local improvement district in the downtown area as a part of the total financing of the downtown transit tunnel.

It is the intent of the Metropolitan Council to form an LID later this year in the amount of $20 million. This represents approximately five percent of the total project cost.

The Board of Directors of the Downtown Seattle Association endorsed the concept of a $20 million LID provided that an objective, professional study of the special benefits provided by this improvement was undertaken. Metro commissioned a respected and experienced appraisal firm to undertake that study at a cost of several hundred thousand dollars. The study has been completed and is being sent to you for your information.

Of 1,000 properties studied, 800 were found to benefit from the transit tunnel project. Some of the properties studied were found not to be specially benefited, such as residential parcels. Others cannot be assessed by law, such as federal property. The study recommends that all properties, including City, County, State and Metro-owned properties which can lawfully be assessed and will benefit from the transit project be assessed in proportion to their benefits. The total benefit accruing to these properties was determined to be $220 million. This translates into an assessment of about nine cents per dollar of benefit.

When the Metro Council takes steps to formally create a downtown transit LID it will include your property. At that time, you will be sent a notice of public hearing and an estimated assessment. A preliminary hearing will be held, the purpose of which is to address the formation of the LID.

SEATTLE (206) 447-4900
ANCHORAGE (907) 276-1851
SAN JOSE (408) 294-6733

June 15, 1987

Bonnie Berk, Project Manager
Metro
821 Second Avenue, M.S. 72
Seattle, Washington 98104

Re: Downtown Seattle Transit Project
Special Benefit Analysis

Dear Ms. Berk:

The special benefit assessment study of downtown Seattle, undertaken to prepare a preliminary assessment roll for the formation hearing phase of the Downtown Seattle Transit Project local improvement district (LID), has been completed. The total transit tunnel project cost is estimated to be $426 million, the total estimated special benefit to all assessable parcels within the LID boundaries is $220 million, and the total proposed LID assessment is $20 million.

Based on our analysis, it is our conclusion that the proposed Downtown Seattle Transit Project LID is feasible, as the total special benefit exceeds the total recommended assessments by nearly $200 million. In percentage terms, the total LID assessment of $20 million is approximately nine percent of the total special benefit found within the LID boundaries.

Your attention is invited to the following items which, by this reference, are to be considered part of the special benefit study:

1. Map of recommended LID boundaries. The recommended LID boundaries, as shown on the attached map, encompasses all assessable real estate specially benefited by the LID project.

2. Recommended LID parcel map.

3. Explanation of techniques and assumptions utilized in the special benefit assessment study.

4. Tabulation showing building name or owner of record, parcel number, zoning, land area, special benefit and recommended assessment. This tabulation represents a summary of the conclusions of the special benefit assessment study.

Respectfully submitted,

SHORETT & RIELY

Keith Riely, MAI, CRE

MACAULAY & ASSOCIATES, LTD.

Charles R. Macaulay, MAI, SREA

REAL ESTATE APPRAISERS & CONSULTANTS

SEATTLE (206) 441-4900
ANCHORAGE (907) 276-1851
SAN JOSE (408) 294-6733

## Executive Summary

The special benefit assessment study encompassing Seattle's central business district has led to the following conclusions:

1. The proposed Downtown Seattle Transit Project local improvement district (LID) is feasible, as the total special benefit exceeds the total recommended assessments.

2. The recommended LID boundaries, as shown on the attached map, encompass all assessable real estate found to specially benefit from the LID project.

3. Estimated special benefit and recommended assessments are shown for each specific parcel on the attached tabulation. This tabulation represents a summary of the conclusions of the special benefit assessment study.

## Description of Transit Tunnel Project

In response to the growing need for improved transit service to and from downtown Seattle, Metro is constructing a 1.3 mile transit tunnel under Third Avenue and Pine Street, running through the heart of downtown. Metro will operate "dual mode" vehicles through the tunnel; vehicles will operate under diesel power on city and county streets and under electric power while transitting the tunnel.

The tunnel will have five station stops: one at each end of the tunnel and three in between. Starting at the southern end of the alignment, the stations will be:

- <u>International District Station</u> - along Fifth Avenue South, between Weller and South Jackson Streets.

- <u>Pioneer Square Station</u> - along Third Avenue between Jefferson and Cherry Streets.

- <u>University Street Station</u> - along Third Avenue between Seneca and Union Streets.

- <u>Westlake Center Station</u> - along Pine Street between Fourth and Sixth Avenues.

- <u>Convention Place Station</u> - along Pine Street between Ninth Avenue and I-5.

In addition to the tunnel and stations, there are two other fixed, capital improvements included within the tunnel project. One is the surface improvements on Third Avenue and Pine Street, running from the Convention Place Station along Pine Street and Third Avenue to Yesler Way. These improvements include repaved

The LID assessments will not be levied upon any property until 1991, when the transit tunnel is completed and special benefits begin to accrue. Once the tunnel is operational, another notice of public hearing will be sent to each property owner, and a final assessment hearing held. Following the final hearing, LID assessments will be charged to each benefited property. Owners will have the choice of paying off the assessment at once, without interest, or financing it over a 20-year period, at an interest rate equal to Metro's cost of borrowing. For illustrative purposes that cost is currently 8.25 percent.

Metro will be holding several informational meetings with interested property owners this fall. Should you have questions about the LID study or the assessment process, please write to Ms. Bonnie Berk, Metro, 821 Second Avenue, M.S. 72, Seattle, Washington 98104, or call Ms. Berk at 684-1019.

Sincerely,

Alan J. Gibbs

Alan J. Gibbs
Executive Director